[Civ. No. 56717. Second Dist., Div. One. June 9, 1980.]

LOS ANGELES COUNTY FLOOD CONTROL DISTRICT,
Plaintiff and Appellant, v.
ALLEN I. MINDLIN, Defendant and Respondent.

COUNSEL

John H. Larson, County Counsel, and Arnold K. Graham, Deputy County Counsel, for Plaintiff and Appellant.

Oliver, Stoever & Laskin, Richard Laskin, Ronald J. Einboden and Max Halfon for Defendant and Respondent.

## Opinion

JEFFERSON (Bernard), P. J.—Plaintiff Los Angeles County Flood Control District (hereinafter referred to as the District) brought an eminent domain action against various entities and individuals, including defendant Allen I. Mindlin, M.D. The District sought title to certain property located on the Santa Clara River in unincorporated county territory north of Newhall, California, for the purpose of constructing a flood control system for the river.

The particular parcel which was the subject of this litigation was owned by defendant Mindlin and has been referred to throughout as parcel 61-A. It is a triangular piece of property of a little more than an acre, abutting the Santa Clara River. At the time of taking, it was unimproved but zoned C-3 (General Commercial).

Prior to trial, the parties agreed that the date of September 3, 1972 would be considered to be the date of condition of the property for purposes of its valuation, that date being a date falling between the filing of the complaint and defendant's answer. But the parties were unable to agree on the value of the parcel; they held widely disparate views on this key issue. The District took the position that the parcel was of minimal value because it lay within the Santa Clara River's confines, and thus was not subject to commercial development; the District's pretrial offer of payment was $11,500. Defendant Mindlin contended that the parcel was not in the river, that it was properly zoned for commercial use, and made a demand of $60,000 as compensation for the taking.

Trial commenced in 1976. The parties entered into a stipulation bifurcating the proceedings. It was agreed that the trial court, sitting without a jury, would hear evidence and resolve certain preliminary issues. These issues were framed by the parties and set forth in exhibit "A," attached to the stipulation.[1] It was agreed that the valuation of the parcel would be determined subsequently by jury trial.

---

[1]The four preliminary issues were:

1. Whether, as plaintiff District contended, parcel 61-A was "within either or both of the following: (a) A river; or (b) A flood control channel," or, as defendant contended, "was not within a river, nor a flood control channel, nor was it within a natural water course."

2. Whether, because of its location in the river, the parcel "was subject to flood hazard which would preclude its use for any purpose for which it is zoned (commercial)

At the conclusion of the court trial, findings of fact and conclusions of law favorable to defendant Mindlin were made and entered by the trial judge.

Between the first and second phase of trial, the parties agreed to the appointment of an independent appraiser by the court. The appraiser was to determine the fair market value of the property pursuant to the trial court's resolution of the preliminary issues. The independent appraisal resulted in a valuation of $44,200.

Following the independent appraisal, plaintiff District made an offer of $40,000 (excluding interest) to defendant. Defendant countered with a demand of $50,000 plus interest. More than 30 days before the second phase—the valuation trial—was to begin, plaintiff District made a "revised final offer" of $44,200 plus interest, reserving, however, its right of appeal. On the date the valuation trial was scheduled to commence, the parties entered into a stipulation that a judgment in condemnation be entered in favor of defendant in the amount of $44,200 plus interest; that defendant was reserving the right to seek litigation expenses; and that both parties were reserving the right to appeal.

The interlocutory judgment of condemnation was entered July 26, 1978, and the final order on August 28, 1978. Thereafter, pursuant to Code of Civil Procedure section 1249.3, defendant sought litigation expenses in the sum of $33,936; the trial court fixed litigation expenses in the sum of $30,312.59.

---

or would require the owner to construct flood control protection devices sufficient to eliminate any such flood hazard to the satisfaction of the County Engineer pursuant to County Ordinances Nos. 1549 and 5468," or, because it was not in the river, the parcel was not subject to these ordinances and "would be available for utilization within any of the permissible uses of C-3 zoning."

3. Whether, as plaintiff District contended, Old Soledad Canyon Road, which abutted the parcel and did afford some protection to it because of an elevation constructed by the parcel's previous owner, constituted construction "of a temporary nature,... not intended to be maintained by the County for the benefit of Parcel 61A, and [subject to excavation] by the County without liability of the County to Mindlin," or, as defendant contended, he was entitled to rely on the continued maintenance of Old Soledad Road, to assume that it would not be excavated, and "that such flood control devices as existed on September 3, 1972, which protected Parcel 61A, would also continue to be maintained by an appropriate governmental agency."

4. Whether Old Soledad Canyon Road (prior to its elevation) did afford flood protection to parcel 61A, and had removed parcel 61A from the river, and constituted the bank of a defined water course; plaintiff District contended that the road was not, and had not been such a barrier while defendant contended that the road had been such a barrier since 1919, and now "constituted the bank of a natural water course...."

Plaintiff District has appealed from both the interlocutory judgment and the final order. ■ ■■■ In its briefs before us, it also challenges the trial court's postjudgment order awarding defendant costs of litigation.[2]

I

*The Evidence Relative to the Trial Court's*
*Findings of Fact and Conclusions of Law*
*Concerning the Preliminary Issues*

■ Plaintiff District attacks the sufficiency of the evidence supporting the trial court's findings of fact, and claims that the court erred in its conclusions of law.

The trial court found that defendant Mindlin had purchased the parcel in question in 1969, and that it has "at all pertinent times" been zoned C-3.

The trial court also found that, in 1919, the State of California had constructed a bridge and roadway embankment abutting parcel 61-A on the south; that the embankment supported a public highway known as "Old Soledad Canyon Road," and was designed to, and did, "divert the normal flows of water in the Santa Clara River away from said Parcel 61A." It was also found that in 1965, or 1966, the previous owner of the parcel, pursuant to a permit issued by the County of Los Angeles, elevated Old Soledad Canyon Road where it abutted the parcel and thereby further insured the diversion of water from it. The trial court also found that, at all times since 1919, either county or state agencies had maintained the road and the embankment.

The trial court determined that "[a]s of September 3, 1972, Parcel 61A was not within the river, nor within a natural water course nor within a flood control channel," and thus was not precluded by county ordinances from being used as commercial property. The trial court decided that defendant was entitled to assume that there would be no excavation of Old Soledad Canyon Road where it abutted the property, and that there would be continued maintenance of the road embank-

---

[2]No appeal lies from an interlocutory judgment of condemnation (Code Civ. Proc., § 904.1.) The appeal is properly taken from the final order. While not specified in plaintiff's notice of appeal, we undertake review of the postjudgment order that awarded defendant litigation expenses.

ment and "such flood control devices, as existed on September 3, 1972" by the appropriate governmental agencies. In addition, the court ruled that from 1919 to 1972, Old Soledad Canyon Road had "constituted the bank of a natural water course and had served to protect Parcel 61A from the ordinary flows of water within said water course."

The primary issue of fact disputed below concerned the location of parcel 61-A in relation to the Santa Clara River, or, conversely, where the river's boundaries were located as of the date of condition for valuation, vis-à-vis the parcel. The difficulty in pinpointing the actual boundaries of the Santa Clara River appears to have stemmed from the fact that it is a desert-type stream which flows sporadically, carrying water from the mountains.

It was stated in *San Gabriel V. C. Club* v. *Los Angeles* (1920) 182 Cal. 392, 397 [188 P. 554, 9 A.L.R. 1200], that "a watercourse in the legal sense [is one which may be] dry except in the winter and spring and very possibly at intervals even in these seasons. It is a channel with defined bed and banks made and habitually used by water passing down as a collected body or stream in those seasons of the year and at those times when the streams in the region are accustomed to flow."

Defendant's appraiser, Beeney, and the various witnesses presented by plaintiff District, testified with reference to maps and photographs presented in historical sequence from before the turn of the century. Two aerial photographs (admitted below as exhibits 100 and 101) of fairly recent vintage (flown in 1970 and 1972 respectively) have been examined by this court while the matter was under review; these exhibits were relied upon by the District at oral argument. While they show the parcel to be in very close proximity to the river, lying in what was at some point in time the river bed, they do not unequivocally establish, as urged by the District, that the parcel was "in the river" on the date of condition for valuation purposes in 1972.

As the trial progressed, it became apparent that the various witnesses had divergent definitions of what was meant by "in the river." Plaintiff District attempted to enlarge the scope of inquiry to show that the parcel, if not actually "in the river," was "in a flood plane" or, at the very least, was subject to flooding, after cross-examination of the District's witnesses had revealed some confusion concerning the term "in the river."

The evidence adduced below established that defendant Mindlin had purchased parcel 61-A in 1969, along with a much larger (approximately seven acres) piece of property which was bisected by Old Soledad Canyon Road. At the time of Mindlin's purchase, the previous owner had constructed a flood control levee for the purpose of providing protection from the water hazard represented by the river for some residential property located farther away. As the result of the construction, parcel 61-A was located between the privately erected levee and the river. It is plaintiff District's position that this circumstance demonstrates that the private construction in 1965 or 1966 had in effect caused parcel 61-A to be "abandoned" to the river. In addition, the District relied upon the fact that the parcel, although zoned C-3, had never been commercially developed by defendant Mindlin, while the larger acreage had eventually served as the site of a shopping center, after a portion of the Old Soledad Canyon Road had been closed to facilitate the project. A realignment of the old road, which became known as New Soledad Canyon Road, had been completed about 1972.

Evidence was also introduced to the effect that, since 1919, the roadway embankment supporting the old road where it abutted the parcel, as well as the bridge, had protected parcel 61-A from the river, causing diversion of water away from it. From 1919 to 1972, parcel 61-A had apparently never been flooded, even when the river was at flood stage and even during the most severe storms recorded in the area, which occurred in 1968 and 1969. There was evidence presented that water had reached the old *road* in 1938, but none establishing inundation of the property itself on that or any other occasion. The trial judge accepted as true testimony that on the date of condition for evaluation, the Santa Clara River did not normally flow over the parcel.

Bearing in mind the issue *as framed by the parties*, we hold that the evidence supports the trial court's determination, i.e., that parcel 61-A was not in the river, nor in a flood control channel or a natural watercourse and that, consequently, the property was properly zoned for commercial development. In upholding this determination, we apply the familiar principles of appellate review set forth in *Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480], as follows: "In resolving the issue of the sufficiency of the evidence, we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment [citation]....All conflicts, therefore, must be resolved in favor of the respondent. [Citation.]"

## II

### *The Issue of Estoppel*

■ We now turn to the third contention as framed by the parties —that relating to the significance, if any, of the long-existing roadway and embankment which diverted water from the parcel. The trial court ruled in effect that the District was estopped from taking the position that the protection provided from the river had been only "temporary" in nature. It rejected the District's claim that the protection provided could be withdrawn with impunity by the governmental agencies concerned, by excavation of or failure to maintain the road. The trial court, however, not only found estoppel, but further ruled that the old road had permanently diverted the Santa Clara River away from the parcel in issue and constituted the natural present bank of the Santa Clara River. Implicit in this ruling is the acceptance of the legal principle that, assuming excavation or failure to maintain the old road, defendant Mindlin would have had a cause of action for inverse condemnation against some governmental entity.

The District's characterization of the protection provided to parcel 61-A by the road as "temporary" in nature is based upon the premise that it was the elevation of the road in 1965 or 1966 by the previous owner of the parcel which had assured the diversion of the river. It was contended by the District at trial that the elevation had been undertaken by that owner when actively engaged in developing a nearby residential area, and that the owner's purpose was to further traffic safety rather than to further flood control.

It was uncontroverted, however, that the road embankment and the bridge had been in existence since 1919, 50 years before defendant had purchased the property. Thus, the trial court accepted as true the fact that the road embankment and the bridge had provided the parcel protection from the river *prior* to the elevation of the road. During that 50-year period the road was public, used by local citizens as well as others, and had been continuously maintained by either the county or the state. What condition was "temporary" or "permanent" in nature was a question of fact for the trial court to resolve, and we conclude that there was substantial evidence supporting the determination that these structures were not "temporary" as the District claims.

The District calls our attention to cases dealing with roadways as authority for the principle that owners of land adjacent to public roadways have no "vested" right in either the location of the road (*Bacich* v. *Board of Control* (1943) 23 Cal.2d 343 [144 P.2d 818]) nor are they entitled to assume that a road will be maintained at a certain elevation (*Eachus* v. *Los Angeles, etc. Ry. Co.* (1894) 103 Cal. 614 [37 P. 750]). It is contended that such cases, including *Avco Community Developers Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785 [132 Cal.Rptr. 386, 553 P.2d 546], establish the rule of law which limits or rejects the concept of "vested rights" in landowners vis-à-vis the government.

But none of the authorities cited deals with a situation where a road and bridge have, for 50 years, diverted water from the land. We do not believe that it is necessary to enter the thicket of "vested" as opposed to "nonvested" rights. ▪ The question is more appropriately viewed as involving the legal principle of *estoppel*, the existence of which is based upon equitable principles and is primarily one of fact; in the absence of palpable error, an appellate court defers to the finder of fact on such an issue. (*Mehl* v. *People* ex rel. *Dept. Pub. Wks.* (1975) 13 Cal.3d 710, 715 [119 Cal.Rptr. 625, 532 P.2d 489].)

▪ "Estoppel, conceptually speaking, results from a representation of fact which the party making such representation is not legally permitted to deny." (*Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670, 678 [138 Cal.Rptr. 338].)

The doctrine of estoppel was aptly described in *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 489 [91 Cal.Rptr. 23, 476 P.2d 423], in the following language: "'Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.'" The *Mansell* court also teaches that "[i]t is settled that '[t]he doctrine of equitable estoppel may be applied against the government where justice and right require it. . . .' [although] an estoppel will not be applied against the government if to do so would effectively nullify 'a strong rule of policy, adopted for the benefit of the public, . . .'" (*Id.* at p. 493.)

In the case at bench, the "representation" consisted of governmental conduct spanning 50 years, i.e., the construction and maintenance of the road and bridge. It must have been evident and compelling during that period of time—not only to the public but particularly to Mindlin at the time he purchased the property—that these structures were serving the dual function of providing public transportation and the diversion of the waters of the Santa Clara River. The District argues that there was no reliance by Mindlin to his detriment on the status quo existing at that time, since he did not expend funds on improvement of the property. We do not agree that commercial development of the property is the only type of conduct or activity which establishes reliance and detriment. In the context of an eminent domain proceeding, detriment may be found in the circumstance that an owner is aware that the zoning authorities have placed commercial zoning on a piece of property located as parcel 61-A was located. Therefore, we uphold the trial court's decision finding estoppel.

The District advances, on its own behalf, the argument of estoppel by deed. This argument was not advanced below. It is contended that since the previous owner granted an easement on the subject property for the roadway, the compensation received therefor constituted a final and total settlement of all claims concerning the roadway, and precludes recognition of the roadway's water diversionary nature as a factor in valuation of the parcel for purposes of condemnation. Since the District did not create an evidentiary record below to support this argument, we must reject it here.

## III

### An Artificial Barrier Becoming a Natural Barrier

■ With respect to the final issue framed by the parties and resolved by the trial court—the question of whether an artificial barrier may become a natural barrier—it has long been recognized that an artificial barrier for water may, with the passage of time and the reliance of the surrounding community, become a natural one. (*Chowchilla Farms Inc.* v. *Martin* (1933) 219 Cal. 1, 17-18 [25 P.2d 435]; *Clement* v. *State Reclamation Board* (1950) 35 Cal.2d 628, 639 [220 P.2d 897]; *Weck* v. *L.A. etc. Flood Control Dist.* (1951) 104 Cal.App.2d 599 [232 P.2d 293].) The District's contention to the contrary is lacking in merit.

In summary, we affirm the findings of fact of the trial court and perceive no errors of law.

## IV

### *The Evidentiary Rulings*

At trial, the District objected on numerous occasions to the evidentiary rulings made by the trial court, making detailed offers of proof. On this appeal, a substantial number of the trial court's rulings have been challenged by the District as being erroneous. There are four areas of contention which require our analysis and resolution.

### A. *The Testimony of Appraiser Wright*

■ The District asserts that, in a series of rulings, the trial court improperly limited the testimony of Wright, its valuation expert. The District sought a mistrial below as the result of the rulings made, but the motion was denied. On behalf of the District, Wright was attempting to testify to the "highest and best use" of parcel 61-A, to express his opinion on the various factors influencing *value* and to relate facts concerning his investigation of the property in question.

■ It is patently clear that, in a condemnation proceeding which has as its objective the ascertainment of fair market value, the "highest and best use" of the property is relevant in making that determination. "The standard for just compensation established in *Sacramento S.R.R.* v. *Heilbron* (1909) 156 Cal. 408, 104 P. 979…requires examination of the highest and best use to which property under condemnation can be put. Value is based on the most advantageous and profitable use to which the property is adaptable, considering the present and future business conditions and wants of the surrounding community." (Condemnation Practice in Cal. (Cont.Ed.Bar 1973), § 4.8 et seq., p. 47.)

The highest and best use of the condemned property is ordinarily the subject of testimony by expert witnesses—qualified appraisers · like Wright. Evidence Code section 814 provides that "[t]he opinion of a witness as to the value of property is limited to such an opinion as is based on matter perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible,

that is of a type that reasonably may be relied upon by an expert in forming an opinion as to the value of property,..."

It is well established evidentiary law that certain hearsay may reasonably be relied upon by such an expert. (See Evid. Code, § 801; Jefferson, Cal. Evidence Benchbook (1972) Opinion Testimony by Expert Witness—Requirements for Admissibility, § 29.4, pp. 505-514.) ▇ The problem presented in the case at bench, however, was one of relevance rather than hearsay, and, in addition, required a determination of the appropriate expertise involved in the issue presented. The trial court repeatedly ruled that Wright could *not* testify concerning the *value* of parcel 61-A; that such testimony was premature at the trial of the preliminary issues, but would be appropriate at the valuation or second stage of the bifurcated trial. Implicit in the trial court's rulings was the fact that the "best and highest use" of the property was not in issue during the first stage of this trial which was devoted to the contentions as framed by the parties and attached to their stipulation as "Exhibit A." (See, *ante*, fn. 1.)

We conclude that the trial judge ruled correctly. It has been held that a witness qualified to express an opinion about market value may not necessarily be qualified to express an opinion about other matters relating to the property. (*People* ex rel. *Dept. Pub. Wks.* v. *Arthofer* (1966) 245 Cal.App.2d 454, 465 [54 Cal.Rptr. 878]; *Los Angeles etc. School Dist.* v. *Swensen* (1964) 226 Cal.App.2d 574, 582 [38 Cal.Rptr. 214].) Even when an expert is testifying concerning value at a hearing on that subject, his testimony may be excluded on the ground that he has insufficient knowledge of particular uses to which the property may be put (see *City of Los Angeles* v. *Lowensohn* (1976) 54 Cal.App.3d 625 [127 Cal.Rptr. 417]). Wright was not qualified to testify concerning the location of the parcel in relation to the river. No attempt was made to so qualify him, although the trial court did suggest that such an attempt be undertaken. His proferred testimony was thus not relevant. In contrast, defendant's appraiser Beeney was qualified as an expert in map-reading as well as appraisal for value, and testified about the parcel with reference to various maps and exhibits without objection.

B. *Exhibit 16-D*

This exhibit, which the record discloses was identified but never admitted into evidence, purported to show the dimensions of the flood

control project plaintiff District intended to construct pursuant to taking the condemned property. We fail to see its relevance to the proceedings. Thus, the District's claim that it was restricted in questioning a witness about the exhibit is without merit.

### C. *Testimony of Harry Bain*

Harry Bain was identified at trial as an agent of defendant Mindlin, retained in 1972 for the purpose of dealing with all of the property owned by defendant near the Santa Clara River. He was questioned by the District concerning statements he had purportedly made to appraiser Wright on occasions after 1972 disparaging the value of parcel 61-A because of its location "in the wash." A long struggle ensued in the trial court over the sufficiency of the foundation evidence to establish Bain's status as a witness adverse to plaintiff District and as an agent of defendant Mindlin so that Bain's hearsay statement would be admissible against this defendant. (See Evid. Code, §§ 1220 and 1222.) While the trial court first ruled that an insufficient foundation had been laid, it later ruled that the foundation had been established as to both adversity and agency pursuant to the deposition of defendant Mindlin. We perceive no error here.

### D. *The Berger Letter*

The District contends that the trial judge erred in refusing to admit exhibit 107 into evidence and in refusing to allow the plaintiff District to read from the deposition of Phillip Berger. The rulings were based upon the ground of irrelevancy.

Berger was a civil engineer employed by defendant and, in 1972, wrote a letter (exhibit 107) to the county road commissioner concerning access to property located "in the wash" or "in the channel." Objection was made to the introduction of the letter, with the District contending that the letter constituted an admission on the part of the defendant that parcel 61-A was in fact "in the river." The letter was dated October 9, 1972, after the date of condition for valuation purposes. While not entirely clear, it appears from the record that the letter neither specified that it concerned parcel 61-A nor admitted that parcel 61-A was "in the wash" or "in the channel." Thus, there was no showing that

it was relevant to the issues before the court. The exclusion for irrelevancy was appropriate. (See Evid. Code, §§ 210, 350.)[3]

## V

### *The Allowance of Litigation Expenses*

After the stipulated judgment was entered, defendant filed a memorandum of costs and disbursements related to the litigation, seeking $33,936. The District responded with a motion to tax costs, claiming that there was no statutory basis for awarding defendant litigation expenses, because defendant was not the "prevailing party" in the litigation. At issue is the proper interpretation and application of former Code of Civil Procedure section 1249.3, now Code of Civil Procedure section 1250.410.[4]

■ The purpose of section 1249.3 (and of its successor statute which is similar in wording) is well established. "Code of Civil Procedure section 1249.3 was intended to promote settlement of valuation disputes in eminent domain proceedings and guarantee full recompense to the landowners in case of unnecessary litigation." (*County of Los Angeles* v. *Kranz* (1977) 65 Cal.App.3d 656, 660 [135 Cal.Rptr. 473].) Litigation

---

[3]Evidence Code section 210 defines "relevant evidence" to mean evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." Evidence Code section 350 provides that "[n]o evidence is admissible except relevant evidence."

[4]That section provided: "At least 30 days prior to the date of trial, plaintiff shall file with the court and serve a copy thereof on defendant its final offer to the property sought to be condemned and defendant shall in like manner, file and serve a copy thereof on plaintiff his final demand for the property sought to be condemned. Service shall be accomplished in the manner prescribed by Chapter 5 (commencing with Section 1010) of Title 14 of Part 2.

"If the court, on motion of the defendant made within 30 days after entry of judgment, finds that the offer of the condemnor was unreasonable and that the demand of condemnee was reasonable, all viewed in the light of the determination as to the value of the subject property, the costs allowed pursuant to Section 1255 shall include all expenses reasonably and necessarily incurred in preparing for and in conducting the condemnation trial including, and not limited to, reasonable attorney's fees, appraisal fees, surveyor's fees, and the fees for other experts, where such fees are reasonably and necessarily incurred to protect defendant's interest prior to trial, during trial and in any subsequent judicial proceedings in the condemnation action.

"In determining the amount of attorneys fees and expenses to be awarded under this section, the court shall consider written, revised or superseded offers and demands served and filed prior to or during the trial."

is deemed unnecessary when it has resulted from *unreasonable* conduct on the part of the condemner while the condemnee has been *reasonable.*

It was aptly observed in *City of Gardena* v. *Camp* (1977) 70 Cal. App.3d 252, 256 [138 Cal.Rptr. 656], that "[s]ection 1249.3 provides no real guidelines for resolving the question of reasonableness." Reviewing courts have had to undertake that task. In *City of Los Angeles* v. *Cannon* (1976) 57 Cal.App.3d 559, 562 [127 Cal.Rptr. 709], the court declared that "[i]t seems to us that reasonableness depends not only on the monetary amounts or the percentage of difference [between the offers and demands]. Reasonableness depends also on the good faith, care and accuracy in how the amount of the offer and the amount of the demand respectively, were determined."

We set forth the pertinent chronology of events in the case at bench. The complaint was filed August 14, 1972, and the answer of defendant Mindlin was filed on September 25, 1972. At the mandatory settlement conference of May 25, 1976, the District's final offer was $11,500 while defendant demanded $60,000. Trial commenced on June 16, 1976, at which time the parties stipulated to the bifurcation of trial; trial commenced on the preliminary issues framed by the parties. Findings favorable to the defendant were filed and entered on November 12, 1976. On February 28, 1977—between the first and second stages of trial—the District made "a final offer" of $40,000. This offer was made after the parties had agreed for the court to appoint an independent appraiser to appraise the property, bearing in mind that the trial court had made determinations on the preliminary issues.

The valuation appraisal was due to be filed by April 3, 1978. This appraisal was $44,200 The valuation trial was scheduled to commence June 1, 1978. On May 17, 1978, the District made an "amended final offer" of $44,200 plus legal interest, reserving, however, the right to appeal. On May 23, 1978, the District made an "Amended Final Offer ... (Revised)," offering the same amount of $44,200, but declaring that the offer "is intended only as a compromise of the issue of fair market value and just compensation for the valuation of these proceedings and is not intended or meant to be a waiver of plaintiff's right to appeal the Findings of Fact and Conclusions of Law...."

At some point in time defendant had reduced his demand to $50,000 plus interest, apparently in response to the February 1978 offer of

$40,000. In any event, the parties filed a stipulation on July 5, 1978, for judgment in the sum of $44,200 plus interest, with each party reserving the right of appeal.

The dispute over allowance of defendant's litigation expenses was heard on September 14, 1978, after the final order had been entered, and defendant was allowed litigation expenses in the amount of $30,312.59, an amount slightly less than that sought. The court made findings to the effect that (1) trial of this matter commenced in June 1976, when the case was assigned to the trial judge for the first stage of trial; (2) plaintiff's offers submitted before the independent appraisal were unreasonable, and defendant's demands were reasonable; (3) defendant was the prevailing party in the litigation; and (4) the amended final offer of plaintiff, submitted subject to the right of appeal, was not a final offer (in the sense intended by Code Civ. Proc., § 1249.3) and could not be considered by the trial court in making its determination.

The District contends here, as it did below, that defendant was not a "prevailing party" in the litigation and thus could not be awarded litigation expenses pursuant to Code of Civil Procedure section 1249.3. The contention, if accepted, would render the section meaningless, for the condemner, in the technical sense, always prevails in condemnation litigation which leads to a judgment that the condemner has obtained title to the subject property. Bearing in mind the perceived purpose of section 1249.3, it is evident that the Legislature intended, and expressed that intention, to compensate condemnees when the condemner has conducted negotiations and litigation in an *unreasonable* manner while the condemnee has not engaged in such conduct. No mention is made of "prevailing parties" in the language of section 1249.3; a different standard, one of reasonableness, is applied to determine whether the statutory award is proper.

A somewhat similar argument advanced by the District is that no award of litigation expenses may be made pursuant to section 1249.3 when the judgment in condemnation has been reached through compromise and settlement, rather than as the result of adversary litigation. In view of the clear purpose of the statute—to *encourage* settlement whenever possible—this interpretation would be absurd; it would penalize a condemnee who accepts an offer before or during trial, the very course of action favored by the statute.

The recent case of *Coachella Valley County Water Dist.* v. *Dreyfuss* (1979) 91 Cal.App.3d 949 [154 Cal.Rptr. 467], is pertinent. In *Dreyfuss*, plaintiff condemner offered $20,940 for the property in question. Defendants filed a valuation statement declaring that the fair market value of the property was $35,000 with severance damages of $27,000, but made a demand for $36,645. After the jury had been sworn, plaintiff chose to accept defendant's statutory demand and judgment was entered for $36,645. The trial court denied defendants' motion for litigation costs. In reversing the trial court, the *Dreyfuss* court observed: "The predecessor section (§ 1249.3) provided that reasonableness was to be 'viewed in the light of the determination as to the value of the subject property.' We do not view the language in section 1250.410 requiring the court to also consider 'the evidence admitted' as meaning that litigation costs may be awarded only where the compensation has been determined by trial. Such a construction would lead to unreasonable and absurd results which would be contrary to the spirit and purpose of the section . . . . If plaintiff's interpretation were adopted, a property owner would be precluded from seeking reimbursement of litigation expenses even if the condemning agency accepted the demand after the case had been submitted to the jury but before it returned its verdict. If the purpose of the statute is to make whole a property owner who has been required to litigate because of the condemner's unreasonable offer, the right to recover litigation costs should hinge, not on whether the amount of compensation has been determined by a jury verdict or a court finding, but on whether the property owner has been unreasonably required to litigate." (*Dreyfuss, supra,* 91 Cal.App.3d 949, 956-957.)

■■ We find this discussion persuasive, and dispositive of the issue here. We hold that condemnees are not precluded from seeking an award of litigation expenses by compromising or settling the valuation of the subject property. If the trial court's determination concerning reasonableness is supported by the record, it must be upheld as any other such determination. In order to review that ruling in the case before us, however, it is necessary first to determine what was the final offer of the District for the purpose of assessing its reasonableness.

Defendant argued successfully below that the District's only meaningful offer was that of $11,500, made before the first stage of trial on the specially framed issues. That offer constituted only 26 percent of the final award. The inquiry becomes that of determining the meaning

in Code of Civil Procedure section 1249.3 of "at least 30 days prior to the date of trial." The District contends that the language "before the trial," has reference to the *valuation* phase of a trial; that the District's initial offer of $11,500 and the defendant's demand of $60,000 were irrelevant, while the offers and demands made *after* the first phase of trial but *before* the valuation phase had begun were the offers and demands which should have been considered by the trial court in determining the factor of reasonableness.

It may well be that the Legislature did not, in enacting Code of Civil Procedure section 1249.3, consider the possibility of bifurcated proceedings. The District would have us add to the word "trial" in the section the adjective "valuation." We have found no helpful precedent on this issue in the decisional law interpreting the section; there has been no discussion of the point insofar as we have discovered. We conclude that we cannot rewrite the statute but must accept the language of the statute as it appeared. It is our view that the language, "before *the* trial," is reasonably construed to mean before the commencement of trial of the eminent domain action including both legal (and possibly preliminary) issues and valuation of the subject property.

We thus hold that the trial court properly decided that trial in the case at bench commenced in June 1976, and that the pertinent offer was that made by the District *before* the litigation on the preliminary issues commenced. Since the statute was intended to compensate a condemnee unnecessarily put to the expense of litigation (without specifying litigation on the issue of value) it seems in keeping with that intention to allow, under appropriate circumstances, an award of expenses even when the litigation task is that of presenting the condemnee's position on preliminary issues; the expense incurred on such issues is as necessary as that incurred with respect to the valuation issue.

But even if the trial court had considered the District's offer of $40,000, made in February 1978, it might well have still regarded it as unreasonable, since this offer did not include interest which by this time constituted a substantial sum.

In addition, there remains the fact that the District's final offer of May 1978, specifically reserved the right to appeal the trial court's determinations on the preliminary issues litigated at the first stage of

trial—issues which could affect the determination of value. There has been little discussion in the case law of what constitutes a final offer pursuant to Code of Civil Procedure section 1249.3. In *Los Angeles Unified Sch. Dist.* v. *C. F. Bolster Co.* (1978) 81 Cal.App.3d 906, 912 [146 Cal.Rptr. 789], the court held that the trial court need not limit its consideration to only one final offer as long as any offer (or revised offer) made was made more than 30 days before trial. And, in *City of Gardena* v. *Camp* (*supra*), it was held that offers made after that deadline could be considered in determining the *amount* of costs to be awarded but *not* the condemnee's entitlement thereto.

It seems clear to us that the "amended final offer" of the District, of $44,200, was not a final offer within the meaning of Code of Civil Procedure section 1249.3. The offer was made with a clearly stated condition attached of reserving the right of appeal. We find illuminating and helpful an observation made in another context: "Since the purpose of the section is to promote settlement of valuation and damage disputes which otherwise would have to be tried, it is intended to require each side to submit a final figure for which it is willing to *settle* those issues." (*Dreyfuss, supra,* 91 Cal.App.3d 949, 954.) (Italics added.) An offer made subject to the condition of reserving the right to appeal does not indicate any intention or willingness to finally resolve the dispute; on the contrary, it bespeaks of determination to seek vindication at a later time of the offeror's position during negotiations.

We conclude that the trial court correctly refused to consider this offer when it resolved the question of reasonableness. Since the only pertinent offer made by the District was for $11,500, the trial court was well within the guidelines of *Kranz, Cannon* and *Bolster* (*supra*) in finding it to be unreasonable when contrasted to the final result of litigation, i.e., $44,200.

The judgment is affirmed.

Lillie, J., and Hanson (Thaxton), J., concurred.

A petition for a rehearing was denied July 8, 1980, and appellant's petition for a hearing by the Supreme Court was denied August 6, 1980.