Filed 5/26/15

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PCF ACQUISITIONCO, LLC et al.,<br><br>    Defendants and Appellants. | A139836<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC11507339) |


In an eminent domain action, may a condemnor's final pre-trial settlement offer, made 20 days before trial and contingent on obtaining approvals from other government entities, be found reasonable under Code of Civil Procedure 1250.410, [1] and thus bar a defendant who rejects it from later recovering its litigation costs? The property owners here, Convenience Retailers and PCF Acquisitionco, LLC (jointly PCF), contend such a contingent offer from the City and County of San Francisco (the City) was unreasonable as a matter of law because it was conditioned on the approval of three different government bodies, thus providing no assurance that PCF's acceptance would result in a pre-trial settlement. We agree. The City's contingent settlement offer did not serve section 1250.410's aims of encouraging the pretrial settlement of eminent domain actions and making property owners whole, and thus was not reasonable within the statute's meaning. We therefore reverse the order denying PCF's motion for litigation expenses and remand to the trial court for further proceedings.

---

[1] Unless otherwise specified, further statutory citations are to the Code of Civil Procedure.

1

# BACKGROUND

Prior to this action, PCF was the owner of real property at the corner of 4th and Folsom Streets in San Francisco. Formerly a gas station, the site is the future site of the Central Subway's Moscone station.

Following several years of negotiations and the exchange of proposed valuations for the property ranging from a low of $3,800,000 (from the City, on January 7, 2010) to a high of $10,875,000 (from PCF, on February 26, 2013), the parties were unable to reach a settlement. Twenty days before trial, pursuant to section 1250.410, the City made its final offer of compensation and PCF made its final demand.[2] The City's offer, for $5,000,000, was expressly made "contingent on the approval of the Federal Transportation Authority [FTA], the Board of Directors of the San Francisco Municipal Transportation Agency [MTA], and the San Francisco Board of Supervisors [the Board]." PCF demanded $8,600,000 plus statutory costs and interest. The disparity between the offer and demand appears to be due primarily to differing views on the likelihood of rezoning and the cost of environmental remediation.

No settlement was reached, and the parties proceeded to trial. The jury determined the total compensation to be awarded for the property was $7,319,000, which reflected a fair market value of $7,400,000 minus $81,000 for environmental remediation. PCF then moved to recover its litigation expenses under section 1250.410.

---

[2]Under section 1250.410, subdivision (a), "At least 20 days prior to the date of the trial on issues relating to compensation, the plaintiff shall file with the court and serve on the defendant its final offer of compensation in the proceeding and the defendant shall file and serve on the plaintiff its final demand for compensation in the proceeding. The offer and the demand shall include all compensation required pursuant to this title, including compensation for loss of goodwill, if any, and shall state whether interest and costs are included. These offers and demands shall be the only offers and demands considered by the court in determining the entitlement, if any, to litigation expenses." Pursuant to section 1250.410, subdivision (b), If the court, on motion of the defendant made within 30 days after entry of judgment, finds that the offer of the plaintiff was unreasonable and that the demand of the defendant was reasonable viewed in light of the evidence admitted and the compensation awarded in the proceeding, the costs allowed pursuant to Section 1268.710 shall include the defendant's litigation expenses."

The City opposed the motion on the grounds that its final offer was reasonable and, alternatively, that PCF's claimed litigation expenses were excessive.

The court denied the motion. It found that the City "considered [PCF's] statement of valuation and the risks of trial, and made a final offer that exceeded its own appraisal by $1,872,000 (or 60%). Because San Francisco was not 'unyielding' in making its final offer, and did not stubbornly adhere to its own valuation, the Court finds that based on substantial evidence, San Francisco's final offer was not unreasonable." The court did not address PCF's argument that the City's final offer of compensation was unreasonable as a matter of law because of its approval contingencies.

This appeal timely followed.

## DISCUSSION

### A. Legal Principles

Section 1250.410 provides for the pretrial exchange of a final offer of compensation by the plaintiff in an eminent domain action and a final demand for compensation by the defendant. "(§ 1250.410, subd. (a).) If the court finds the plaintiff's final offer was unreasonable and the defendant's final demand was reasonable when 'viewed in the light of the evidence admitted and the compensation awarded in the proceeding, the costs allowed . . . shall include the defendant's litigation expenses." (§ 1250.410, subd. (b).)

The purpose of section 1250.410 is " 'to promote settlement of valuation disputes in eminent domain proceedings and guarantee full recompense to the landowner in case of unnecessary litigation.' " (*San Diego Gas & Electric Co. v. Moreland Investment Co.* (1986) 186 Cal.App.3d 1151, 1158; see *San Diego Gas & Electric. Co. v. Schmidt* (2014) 228 Cal.App.4th 1280, 1305 (*Schmidt*).) "Litigation is deemed unnecessary when it has resulted from unreasonable conduct on the part of the condemnor while the condemnee has been reasonable." (*Los Angeles County Flood Control Dist. v. Mindlin* (1980) 106 Cal.App.3d 698, 715, italics omitted (*Mindlin*).) Section 1250.410 "provides no real guidelines for resolving the question of reasonableness" (*City of Gardena v. Camp* (1977) 70 Cal.App.3d 252, 256), but relevant factual issues include the amount of the

3

difference between the demand or offer and the compensation awarded, the percentage of difference between the demand or offer and the award, and the good faith, care and accuracy with which the demand or offer was calculated. (*Schmidt, supra,* at p. 1305; *Los Angeles County Metropolitan Transportation Authority v. Continental Development Corp.* (1997) 16 Cal.4th 694, 720.)

This case is unusual because the issue for our review is not about the amount of the City's offer or the care with which it was formulated. The key issue, instead, is whether the offer satisfied section 1250.410 despite the fact that PCF would end up with no settlement at all if the FTA, the MTA or the Board were to subsequently reject it.[3] Indeed, even the City acknowledges that its $5,000,000 "final offer of compensation" was not so much an "offer" as a *recommendation* to enter a settlement that "could not legally be achieved" without subsequent legislative approval. Should a condemnee be denied the right to be made whole for its litigation expenses because it rejects a settlement offer that does not, in fact, promise settlement? Keeping in mind the statute's purposes of promoting settlement and making a property owner whole for the cost of unnecessary litigation, we do not think the Legislature intended to make a condemnee chose between entering into an uncertain and contingent bargain or risk losing any chance of recovering its litigation expenses if it proceeds to trial.

There seem to be no cases directly on point, but *Mindlin, supra,* 106 Cal.App.3d 698, is instructive. There, the court of appeal discussed a condemnor's offer made after the then-30-day pretrial cutoff under the predecessor to section 1250.410 and conditioned on the condemnor's right to appeal a trial court ruling on a bifurcated issue. Addressing the appeal condition in dictum, the court wrote: "It seems clear to us that the 'amended final offer of the District . . . was not a final offer within the meaning of Code of Civil Procedure section 1249.3. The offer was made with a clearly stated condition attached of reserving the right of appeal. We find illuminating and helpful an observation made in another context: 'Since the purpose of the section is to promote settlement of valuation

---

[3] And, as the City points out, the settlement was also subject to veto by the Mayor.

4

and damage disputes which otherwise would have to be tried, it is intended to require each side to submit a final figure for which it is willing to settle those issues. [Citations.]'  An offer made subject to the condition of reserving the right to appeal does not indicate any intention or willingness to finally resolve the dispute; on the contrary, it bespeaks of a determination to seek vindication at a later time of the offeror's position during negotiations."  (*Id.* at p. 719, italics omitted.)

While the point is dictum in *Mindlin,* the court of appeal in *People ex rel. Dept. of Transportation v. Zivelonghi* (1986) 183 Cal.App.3d 187 (*Zivelonghi*) adopted *Mindlin*'s analysis to hold a condemnor's final offers unreasonable for purposes of section 1250.410 because they were subject to a reserved right to appeal.   "Under these circumstances," the court noted, "the offer as to valuation would not finally conclude the matter if plaintiff's appeal were successful."  (*Id*. at pp. 192–193.)  Although the condition here is approval rather than an appeal, the same reasoning applies to the same effect.  The ostensible settlement would be nullified if either the FTA, the MTA, or the Board declined to approve the City's compensation offer.  As far as we can tell from the record, PCF had no assurance that these approvals would be forthcoming, or even that it would know whether it had a binding settlement within the 20 days before the trial was to commence.  Indeed, the City acknowledges that the Board's process for approving settlements might potentially be completed in 30 days but, "start to finish, typically takes six to eight weeks," and it is silent as to the time frame for approval by the MTA and FTA.  In these circumstances, the City's final offer was not really an offer at all.

We are not persuaded by the City's point that prior legislative approval of its final offer was not "practical" because of various time frames and open meeting requirements imposed by the San Francisco Municipal Charter and the Board's rules of order.  The City argues that, while its charter authorizes the city attorney to *recommend* a settlement, it can only *settle* litigation by passing an ordinance (S.F. Charter, § 6.102(5); see also § 8A.102(d) [requiring settlement approval from MTA Board of Directors]), and the open hearing requirements for settlement ordinances would force the public disclosure of its offer in advance of parties' pre-trial exchange.  But assuming arguendo that this is so, the

5

City's charter and administrative rules neither exempt it from section 1250.410 nor necessarily conflict with its mandate. "San Francisco is autonomous with respect to all municipal affairs. As to matters of statewide concern, however, it is subject to overriding state laws." (*Rivero v. Superior Court* (1997) 54 Cal.App.4th 1048, 1059.) It is long settled that the exercise of the power of eminent domain is such a matter of statewide concern. (*City of Los Angeles v. Koyer* (1920) 48 Cal.App.720, 725 [municipality may only conduct eminent domain as expressly authorized by state legislation].) Accordingly, the City had to make a timely, bona fide final offer or face the consequences spelled out in section 1250.410, subdivision (b), whether or not its own rules require advance legislative approval. Were this not so, as PCF observes, "every municipality in California could pass legislation exempting itself from the requirements of [section 1250.410] and other statutory rules applicable to the exercise of eminent domain."

In any event, it seems the City could have privately sought and obtained Board approval in a closed session without prematurely disclosing its final offer. Under section 67.10, subdivision (d) of the San Francisco Administrative Code, the Board may hold a closed session to confer with, or receive advice from, its legal counsel regarding pending litigation when discussion in open session would likely and unavoidably prejudice the City's litigation position.[4] Under Section 67.12(b)(1), a "policy body" must publicly report any action taken in a closed session concerning real property negotiations pursuant

---

[4]Pursuant to PCF's request, we take judicial notice of relevant provisions of San Francisco's City Charter and Administrative Code. (See Evid. Code, §§451, subd. (a), 452, 459; *County of Kern v. Ginn* (1983) 146 Cal.App.3d 1107, 1111–1112; *Edgerly v. City of Oakland* (2012) 211 Cal.App.4th 1191, 1194 fn. 1.) Under section 67.10 of the Administrative Code, "A policy body may, but is not required to, hold closed sessions . . . (d) Based on advice of its legal counsel, and on a motion and vote in open session to assert the attorney-client privilege, to confer with, or receive advice from, its legal counsel regarding pending litigation when discussion in open session concerning those matters would likely and unavoidably prejudice the position of the City in that litigation." We also grant the City's request for judicial notice of excerpts of the City Charter, Administrative Code and Board of Supervisors' Rules of order. PCF's request for judicial notice of an unfiled settlement offer in an unrelated eminent domain action is denied.

6

to Government Code section 54956.8[5] "as soon as the agreement is final." Where, as in this case, "final approval rests with another party to the negotiations, the body shall disclose the fact of that approval, the substance of the agreement and the body's vote or votes thereon upon inquiry by any person, *as soon as the other party or its agent has informed the body of its approval*." Thus, the City could have approved a settlement offer in closed session without disclosing it to the public until and unless PCF accepted the offer. Section 67.12(b)(1) is expressly operative "[n]otwithstanding" the Administrative Code's more general provision on the disclosure of settlements (S.F. Admin. Code § 67.12 (b)(3)), so the City's contention that the more general provision requires disclosure of offers approved in closed sessions is unpersuasive. Moreover, section 1250.410 does not dictate the earliest possible time for a final offer, only that it be not less than 20 days prior to trial. The City, as an alternative, could thus have extended a final offer with ample time for approval and acceptance prior to trial. And while the City complains it could not have obtained legislative approval because it was unable to depose PCF's appraiser until three business days before the statutory deadline for exchanging settlement offers, it was under no compulsion to twice delay that deposition—as it concedes it did. (See generally Code Civ. Proc., §1258.210 et seq. [expedited discovery procedures in eminent domain cases].)

We conclude the City's conditional settlement extended 20 days before trial was unreasonable for purposes of section 1250.410. We therefore reverse the order denying PCF's motion for litigation expenses and remand to the trial court for further proceedings

[5]Section 54956.8 of the Government Code provides that "Notwithstanding any other provision of this chapter, a legislative body of a local agency may hold a closed session with its negotiator prior to the purchase, sale, exchange, or lease of real property by or for the local agency to grant authority to its negotiator regarding the price and terms of payment for the purchase, sale, exchange, or lease. [¶] However, prior to the closed session, the legislative body of the local agency shall hold an open and public session in which it identifies its negotiators, the real property or real properties which the negotiations may concern, and the person or persons with whom its negotiators may negotiate. [¶] . . . [¶] Nothing in this section shall preclude a local agency from holding a closed session for discussions regarding eminent domain proceedings pursuant to Section 54956.9."

7

on the amount of litigation expenses to be awarded.  Nothing in our conclusion precludes the City from also challenging the reasonableness of PCF's final demand on remand, if it has a basis to do so, although its forbearance from raising such a challenge to date suggests it has found no dog to launch into that particular fight.

## DISPOSITION

The order denying PCF's motion for litigation expenses is reversed and the matter is remanded to the trial court for further proceedings.

_____
Siggins, J.

We concur:

_____
Pollak, Acting P.J.

_____
Jenkins, J.

*City & County of San Francisco v. PCF Acquisitionco LLC*, A139836

Trial Court:                                City & County of San Francisco Superior Court

Trial Judge:                                Ronald Evans Quidachay

Counsel:

Matteoni, O'Laughlin & Hechtman, Bradley M. Matteoni, Norman E. Matteoni for Defendants and Appellants PCF Acquisitionco, LLC and Convenience Retailers, LLC.

Dennis J. Herrera, City Attorney, James Emery, Brian F. Crossman, Deputy City Attorneys for Plaintiff and Respondent City and County of San Francisco.