[S. F. No. 6250. In Bank.—December 6, 1915.]

CITY OF OAKLAND (a Municipal Corporation), Respondent, v. PACIFIC COAST LUMBER AND MILL COMPANY (a Corporation), Appellant.

EMINENT DOMAIN—CONDEMNATION BY MUNICIPALITY—FUND FOR PAYMENT PROVIDED BEFORE ACTION—TAXPAYER MAY BE JUROR.—In an action by a municipal corporation for the condemnation of land, which did not involve the levying of a tax for the payment of the award, a fund for that purpose having been provided before the commencement of the action, a citizen and taxpayer of the municipality is not disqualified, under section 602, subdivision 5, of the Code of Civil Procedure, to serve as a juror.

ID.—NONCONTIGUOUS LANDS CONSTITUTING ONE PARCEL—QUESTION OF LAW FOR COURT.—In an action to condemn a leasehold interest in land, where the probative facts are without controversy, the question whether two pieces of land constitute "one parcel," within the meaning of section 1248 of the Code of Civil Procedure, authorizing an award for damages accruing to the portion of the parcel not sought to be condemned, is one of law for the determination of the court.

ID.—AMOUNT OF AWARD—DETERMINATION BY JURY.—In an action to condemn land, it is only the "compensation," the "award," which the constitution declares shall be found and fixed by a jury. All other questions of fact, or of mixed fact and law, are to be tried without reference to a jury.

ID.—UNITY OF USE OF NONCONTIGUOUS LANDS.—In determining whether two noncontiguous pieces of land constitute "one parcel," unity of use should not be regarded as the controlling factor.

ID.—MEASURE OF DAMAGES—INJURY TO BUSINESS.—Under section 1248 of the Code of Civil Procedure and the provisions of the constitution, the award of damages is limited to the property taken and the resultant damages to contiguous property injured by the severance. An award for damages to the business or goodwill of the business of the owner is not authorized.

ID.—MARKET VALUE.—It is the market value, that is, the highest price estimated in terms of money, which the land would bring if exposed for sale in the open market, which measures the damages for a taking.

ID.—MARKET VALUE OF LEASEHOLD.—In the case of the condemnation of a leasehold, unless exceptional circumstances are shown, the value of the lease is its market value.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order refusing a new trial. William H. Waste, Judge.

The facts are stated in the opinion of the court.

W. H. H. Hart, and Snook & Church, for Appellant.

Ben F. Woolner, City Attorney, Charles A. Beardsley, Assistant City Attorney, Paul C. Morf, City Attorney, and John J. Earle, Deputy City Attorney, for Respondent.

HENSHAW, J.—This is an action in eminent domain. The jury's award of damages was not acceptable to defendant, which appeals. Its principal complaint upon appeal is that the trial court mistook the law controlling appellant's

right to compensation; that this mistake was carried through the rulings of the court in its refusal to receive offered evidence and in its instructions to the jury. But before approaching this consideration one minor matter invites attention.

Upon *voir dire* it was shown that one of the jurymen was a resident and taxpayer within the city of Oakland. Defendant's challenge to this juror for cause, under section 602, subdivision 5, of the Code of Civil Procedure, was overruled. Appellant urges that the disqualification of this juror was established by the showing that he was a taxpayer of the plaintiff, which plaintiff necessarily would be called upon to pay the expense of condemnation and the award made. That there is much authority to this effect is undoubted. Indeed, Lewis lays it down as the general rule. (Lewis on Eminent Domain, 3d ed., sec. 619.) The condition of our laws, however, leads irresistibly to the conclusion that the legislature did not design to declare that the mere fact that a citizen was a taxpayer, in litigation in which his city or county was financially interested, disqualified that citizen from sitting as a juror in the case. If the construction contended for by appellant is the true one, then it must be said that no action in eminent domain in which a county of the state is a party can ever be tried, for the law declares that such trial must be had in the county in which the land is situated; further, it gives the right of trial by jury, and, finally, it declares that the jurors must be residents and taxpayers within the county. Still further, no action at all in which the city and county of San Francisco or any other consolidated government is a party can be tried within such city and county if the action be one in which a monetary judgment for or against the municipality may be awarded. It is true that this is but an argument *ab inconvenienti* and will have no force against positive terms of the written law, but at least it is persuasive of the view that the legislature did not design deliberately to produce such a result, and justifies a court in reaching, if it can from a reasonable construction of the law, a conclusion which would avoid it. In *Meyer* v. *San Diego*, 121 Cal. 102, [66 Am. St. Rep. 22, 41 L. R. A. 762, 53 Pac. 434], upon which appellant relies, the matter resolved itself into the single proposition that the judge was disqualified because he was called upon to sit and ''to decide directly whether or not property which he owned was to be subjected to the burden

of the special tax.'' This case was distinguished in *Higgins* v. *San Diego,* 126 Cal. 303, [58 Pac. 700, 59 Pac. 209], where it is pointed out that the judge was not disqualified in an action against the city to collect a money demand, as the action did not directly involve the levying of a tax upon his property. In *Los Angeles* v. *Pomeroy,* 133 Cal. 529, [65 Pac. 1049], it was held that a judge who was a taxpayer was not by this fact disqualified in a condemnation suit prosecuted on behalf of the city. We think that the utmost liberality of construction is declared when it is said, as here we say, that touching the disqualification of a taxpayer's interest, the same showing, and only the same showing, which would disqualify a judge would disqualify a juror. In this case it is alleged and admitted that the action did not involve the levying of a tax, and that the city of Oakland had provided before the commencement of the action for a fund for the payment of the award. The challenge for cause was therefore properly overruled.

The physical facts and circumstances are not in dispute and may be briefly stated. The legal controversy arises over the construction to be put upon those facts. The Oakland Water Front Company had leased to defendant certain of its tidelands on the estuary harbor front of the city of Oakland. The city of Oakland designed to improve this waterfront by widening, deepening, and rectifying the channel. It purchased the fee of the property from the Oakland Water Front Company, subject to defendant's leasehold interest, and then brought this action to condemn that leasehold interest as to a part of the property so held under lease by defendant. At the time of the commencement of the action the lease had two and two-thirds years to run, with an option of six years renewal. Under the lease and renewal the defendant would be called upon to pay to its landlord one hundred and seventeen thousand dollars rental. Defendant used this property for wharf and lumber-yard purposes. The lumber-yard constituted a convenient and valuable adjunct and accessory to the planing-mill business, which defendant also conducted. Its planing-mill and adjacent property, part of which it owned and a part of which it leased, were situated on the upland of the city of Oakland, between Third and First streets and Grove and Castro streets. The leased tide-lands lay also between the projections of Grove and Castro streets. Access to

the planing-mill from the leased tide-lands upon which the lumber-yard was situated was also available by the public highway of Grove or Castro streets, the leased lands being separated from the mill property, which lay entirely to the north of First Street, by other lands extending south from the southerly line of First Street some three or four hundred feet. A narrow right of way twenty feet in width had been reserved through this property by the Oakland Water Front Company. This right of way, however, was a reservation in favor of the Oakland Water Front Company and not of the defendant, which in fact never used it, hauling its lumber for mill and other purposes, as has been said, away from its lumber-yard over Grove or Castro streets.

These are the physical facts over which there is no dispute. The court in its rulings and in its instructions to the jury declared that the award should be based upon the value (meaning thereby the market value in contemplation of its use) of the portion of the leasehold property taken, and the damages, if any, which resulted from that taking to the remainder of the leasehold. Appellant insisted that the leasehold property taken was, in contemplation of law, a part of the larger detached parcel upon which its mill and mill business were situated; that the fact that other lands held in private ownership and a public highway intervened between the leasehold property and the mill property did not destroy the character of the two properties as forming one parcel; that the physical separation was negligible because unity of use and not physical contiguity was the controlling factor, and, finally, if neither of these positions should be sustained, appellant, under the constitution of this state, was clearly entitled to recover damages for the proved injury to its mill business, appellant in this regard saying, "We submit we have a law higher than a statute which permits a defendant to prove damage to his business; that is, that the constitutional provision is broad enough to include all sorts of damage to business and damages of all kinds of property, whether taken or not." That it was upon this construction of the law that defendant really attempted to try its case will be apparent when it is said that appellant, itself placing a value upon the freehold of two hundred and six thousand dollars, lays its damages for the interference with its leasehold and other properties at three hundred and four thousand dollars,

and as to this must be added the one hundred and seventeen thousand dollars rental for that period of time, it fixes the total valuation of four hundred and twenty-one thousand dollars for damages to a nine years' right of possession of property, the absolute and perpetual right to the possession of which it places at two hundred and six thousand dollars. Kendall was the principal owner of defendant, and as a witness testified that defendant's leasehold interest he valued at $48,417. It was this leasehold interest which the city sought to condemn. The other elements of value, which together in terms of money reached the aggregate of $304,116.28, are thus defined by that witness' testimony:

"1. The value of the wharf.

"2. The value of the improvements, which consist of roadways, filling, fire system, etc.

"3. The value of wharfage and dockage.

"4. The value of the advantages that I have in handling lumber over the wharf by means of the vessels coming directly up to the property, or business.

"5. The value that I have in selecting from merchantable lumber select lumber by means of having a yard in connection with the other property.

"6. And the value that I have, or that the plant has, by means of buying lumber at wholesale which I would not have, did the plant not have a yard."

Complaint is made that the court by its rulings itself determined whether or not these pieces of property constituted one parcel within the meaning of section 1248 of the Code of Civil Procedure, and refused to allow this question to be submitted to the jury for determination. If appellant is right in his position that this was error, this consideration need not proceed further, and the appeal will have to be sustained. But neither the state nor any of its mandatories, nor any other person or corporation, exercising the power of eminent domain, is compelled to submit to the determination of a jury every question of fact (*Vallejo & N. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545, [147 Pac. 238]), and this question of fact (namely, whether or not, the probative facts being without controversy, the resultant fact establishes the existence of a parcel from which a portion is to be taken) is essentially a question of law for the determination of the court. It is only the "compensation,"

the "award," which our constitution declares shall be found and fixed by a jury. All other questions of fact, or of mixed fact and law, are to be tried, as in many other jurisdictions they are tried, without reference to a jury. (Const., art. I, sec. 14.) Therefore the court, in itself ruling and in not submitting to its jury the question whether the property taken constituted a part of the larger "parcel" comprising the mill property, adopted the proper procedure. And we are satisfied that the ruling was correct. Certainly it was correct in that it could not be said, within the physical terms and definitions of a "parcel," that noncontiguous upland, separated by hundreds of feet of other private property from tide and submerged lands, could with the latter form a single parcel. Nor, indeed, is this contention very seriously argued. It is insisted, however, that a liberal definition should be given to "parcel," and that unity of use should be regarded as the controlling and determinative factor in the solution of this question whenever it arises. But if unity of use is the controlling consideration, it can matter not how far in fact the pieces of land are separated. A factory may be in one county, its warehouse in another, its principal sales agency in a third; any interference with any of the three properties would of necessity be an interference with the unity of use of them all, and if appellant's position is sound, damages to the other two may be recovered for a taking of or an injury to the third. Indeed, this is but another way of phrasing the real contention of appellant, as quoted above from its brief, that business is property, and when the taking by the state or its agencies interferes with, impairs, damages, or destroys a business, compensation may be recovered therefor. We are not to be understood as saying that this should not be the law when we do say that it is not our law. It is quite within the power of the legislature to declare that a damage to that form of property known as business or the goodwill of a business shall be compensated for, but unless the constitution or the legislature has so declared, it is the universal rule of construction that an injury or inconvenience to a business is *damnum absque injuria*, and does not form an element of the compensating damages to be awarded. (*San Francisco* v. *Kiernan*, 98 Cal. 614, [33 Pac. 720]; 15 Cyc. 646, 733, 735; Nichols on Eminent Domain, sec. 190.) A great variety of provisions will be found in the enactments

and statutes of the different states.   In some, by special act, the jury of award is instructed to allow compensation for injury to business.   In this state the controlling statute is section 1248, Code of Civil Procedure, and that provides merely that in addition to the damages for the property taken, if that property constitutes a part of a "larger parcel," there shall also be awarded "the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned."   This very language limits in terms the award of damages to the *property taken* and the resultant damages to contiguous *property* injured by severance of the property taken.   It of course has not the most remote applicability to the business, profession, or occupation which may be conducted upon the property.

It is quite apparent from what has been said that the asserted damage to the mill property was in reality a damage to the business and not to the realty itself.   Indeed, in the nature of things, a public improvement such as this would tend strongly to enhance rather than to depreciate in value the neighboring upland properties, and it is in recognition of this that appellant insists that under the constitution, which of course controls every legislative enactment, it is entitled to these asserted damages done to its business.   But the meaning of our constitutional amendment, which provides for compensation to the owners of property damaged as well as taken, has been elaborately considered and set forth by this court, and the view which this court has reached does not support appellant's contention.   In *Eachus* v. *Los Angeles etc. Ry. Co.,* 103 Cal. 614, [42 Am. St. Rep. 149, 37 Pac. 750], will be found a discussion of this amendment, and it is there declared "the *damage for which compensation is to be made is a damage to the property itself,* and does not include a mere infringement of the owner's personal pleasure or enjoyment."   So it is that this court has uniformly declared that it is the market value, that is, the highest price estimated in terms of money, which the land would bring if exposed for sale in the open market, which measures the damages for a taking.   (*Sacramento Southern R. Co.* v. *Heilbron,* 156 Cal. 408, [104 Pac. 979].)   And in the case of a leasehold, unless exceptional circumstances are shown, it is held that the value of the lease is its market value.   (*Kishlar* v. *Southern Pac. R. Co.,* 134 Cal. 636, [66 Pac. 848].)   Ap-

pellant "takes exception" to the language of this court in the Heilbron case to the effect that the value in terms of money which a witness might think the lands would have for some speculative use to which it was not put, and to which it might never be put, was not legitimate evidence. In the Heilbron case this court was not dealing with the question of the value of land as evidenced by a present use, but solely with the problematical values sought by the witnesses to be put upon the land for problematical uses. If the exception to the exclusion of this kind of evidence is well taken, then it would be quite permissible for the witnesses to say, "if oil were discovered upon the land it would be worth twenty thousand dollars an acre," "if a gold mine were discovered upon it it would be worth ten thousand dollars an acre," "if a man wanted to buy it and establish a town site it would be worth three thousand dollars an acre," and so on, until such inquiry in a condemnation suit would bear a close affinity to Lord Dundreary's famous question, "If you had a brother would he like cheese?"

But appellant has no just complaint to make of the trial court's rulings in this regard. Nor yet has this court ever said that the value in use, as contra-distinguished from the estimated value of a proposed problematical use, might not be given in terms of money, not as determinative of the question, but as being evidence of the ultimate fact which the jury is called upon to find, namely, the market value, and all evidence of this character was admitted by the trial court and submitted to the jury under proper instructions as to the consideration which they should pay to this evidence in reaching their verdict.

We have not thought it of value to review the numerous adjudications from sister states upon this question. They arise under many differing statutes. Some are special statutes expressly providing for compensation for injury to business; others in terms instruct the jury of award to give to the owner damages for any and all detriment which may be occasioned to him by the taking. In this state, as we have seen, our constitution and our statute, and the construction which this court has uniformly put upon them, limit compensation to the damage sustained by the property, the foundation of the computation of which damage is, and necessarily must be, the market value.

The instructions of the court and its rulings upon the admission of evidence were one and all in strict conformity to this principle, and therefore do not require explicit consideration.

For the reasons given the judgment and order appealed from are affirmed.

Melvin, J., Shaw, J., Sloss, J., Lawlor, J., Lorigan J., and Angellotti, C. J., concurred.

Rehearing denied.