Filed 4/24/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE ex rel. CALIFORNIA DEPARMENT OF TRANSPORTATION,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HANSEN'S TRUCK STOP, INC., et al.,<br><br>    Defendants and Appellants. | A133252<br><br>(Humboldt County<br>Super. Ct. No. DR 070923) |

In eminent domain actions, the law directs the parties to exchange formal settlement proposals prior to trial. (Code of Civ. Proc., § 1250.410, subd. (a).)[1] If, after trial, the property owner's statutory demand for compensation is found to be reasonable and the condemning agency's statutory offer unreasonable, then the property owner is entitled to recover litigation expenses. (§ 1250.410, subd. (b).) When determining entitlement to litigation expenses, the law instructs the judge to consider *only* the final offer and demand that were made "[a]t least 20 days prior to the date of the trial on issues relating to compensation." (§ 1250.410, subd. (a).)

In this eminent domain action, the proceedings were bifurcated. A statutory offer and demand ($784,000 and $5 million, respectively) were made prior to the first trial. In that trial the court was asked to decide whether the property owners could pursue damage claims for impairment of access and loss of goodwill as a result of the condemnation. The property owners prevailed.

---

[1] All statutory references are to the Code of Civil Procedure, unless otherwise specified.

Prior to the second trial the property owners made an amended, much lower demand, but the condemning agency made no new offer. In the second trial the jury determined the amount of compensation due. It returned a verdict in excess of $2.5 million, which was about 85 percent of the property owners' amended demand of $2.99 million and more than three times the agency's original offer of $784,000.

The property owners made a motion to recover their litigation expenses. Looking only at the offer and demand made before the *first* trial date, the trial court denied the motion for litigation expenses because the property owners' demand of $5 million was unreasonable. The property owners appealed the order.

The appeal poses two questions of statutory interpretation. First, when directing the court to consider only the offers and demands made "prior to the date of the trial" to determine entitlement to litigation expenses, does the statute mean the court must consider only offers and demands made prior to the *first date set for trial*? If it does not, then the second question is, in a bifurcated proceeding, does the statutory phrase "prior to the date of the trial on issues relating to compensation" refer to (a) the trial in which the right to damages is adjudicated, or (b) the trial in which the amount of compensation is adjudicated?

We conclude the statute does not restrict the court to considering only the offer and demand made prior to the first date set for trial. We further hold that, in a bifurcated proceeding, "the trial on issues relating to compensation" means the trial in which the amount of compensation is determined. We will therefore vacate the order denying litigation expenses and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In December 2007, the State of California (the State), through its Department of Transportation, filed a complaint in eminent domain, seeking to condemn a portion of a

larger parcel owned by the Hansens,[2] for the purpose of building a highway interchange. The Hansens operated a truck stop on the larger parcel. The Hansens filed answers that included claims for additional compensation due to the impairment of highway access and the loss of goodwill in their business resulting from the condemnation and the construction project. Trial was set for March 2009.

Two months prior to the trial date the State filed a motion to bifurcate the proceedings, seeking separate adjudication of the Hansens' alleged entitlement to seek damages for impairment of access and loss of goodwill. The court granted the bifurcation request, and ordered that "[t]he jury phase of the trial, to determine the amount of just compensation . . . shall immediately follow the court phase of the trial."

Prior to the March 2009 trial date, the State filed its "Final Offer of Compensation" pursuant to Section 1250.410, offering a total of $784,000, excluding interest and costs. The Hansens simultaneously filed their "Final Demand for Compensation" in the sum of $5 million comprised of $600,000 for the property being taken ("the take"), $1.9 million as "severance damages" (including impairment of access) and $2.5 million for loss of goodwill.

After several continuances, the court trial on the bifurcated issues was scheduled for September 2, 2009, and the jury trial on compensation was set for an estimated start date of September 17. The bench trial went forward in September, but the court did not issue its decision until October. It ruled that the Hansens "ha[d] proven entitlement to the benefits of the goodwill statute for not only substantial impairment of access and loss of visibility and exposure, but also for impairment of the internal use of [their] property."

---

[2] Various persons and entities were named as defendants, but only two have appealed, Hansen's Truck Stop, Inc. and Charles F. Hansen, Jr., as Trustee of the Charles & Imogene Hansen Trust No. 1 U/T/D February 1, 1979. We shall refer to them collectively as the Hansens.

The jury trial on compensation was set for February 22, 2010, but was continued by agreement of the parties to April 19, 2010. Twenty days before the continued trial date, the Hansens filed a second "Final Demand for Compensation." The new demand was for $2.99 million, comprised of $570,000 for the take, $200,000 for goodwill, $340,000 for loss of tangible property and $1.88 million for severance damages. The State did not file a new offer, but did file an acceptance of only the goodwill portion of the new demand, in the amount of $200,000.

The Hansens opposed the acceptance, stating they had no intention of separately settling the component parts of their demand. The State moved for an order overruling the Hansens' objection, arguing that it had served "a valid and operable acceptance of defendants' March 30, 2010, revised statutory demand for goodwill compensation," and that elimination of the goodwill issue will significantly shorten the trial and thus "fulfill the intent and purpose of eminent domain settlement offer/demand procedures (Code Civ. Proc. § 1250.410)." The court denied the State's motion.

After two more continuances, the jury trial finally commenced on January 18, 2011. On February 9, 2011, the jury issued a special verdict, which awarded compensation to the Hansens in the sums of $525,122 for the land and improvements, $300,000 for loss of goodwill, $8,000 for vegetation easement, and approximately $1.7 million in damages to the remainder of the property. The total judgment, exclusive of interest, was $2,533,122.

The Hansens filed a motion to recover $345,306 in litigation expenses. The Hansens argued that their final demand of $2.99 million was reasonable and the State's final offer of $784,000 was unreasonable, in light of the jury's award in excess of $2.5 million.

The State opposed the motion, arguing that only the Hansens' first demand, in the amount of $5 million, could be considered in determining whether the court should award

4

litigation expenses because the second demand (for $2.99 million) was filed after the trial had commenced, and was therefore untimely.

The Hansens contended that the second demand was timely and argued, further, that the State had waived its objections to the timeliness of the demand by its partial acceptance of the goodwill component of the demand and by its admission that the demand was "in compliance with Section 1250.410."

The trial judge rejected the waiver argument as unsupported by authority, and agreed with the State's position. The court concluded that case law "required" it to use the Hansens' first demand when evaluating the reasonableness of the parties' offer and demand, although it believed the "better result" would be that any final offers or demands made 20 days prior to a trial on issues of compensation should be considered. The court found the Hansens' first demand of $5 million to be unreasonable, and therefore denied the Hansens' motion to recover litigation expenses. The Hansens appealed from the order denying the motion.

## II. THE STATUTORY FRAMEWORK

### A. *The Current Statute*

Section 1250.410 governs the service and filing of settlement offers and demands in condemnation proceedings, and the circumstances under which the condemnee is entitled to an award of litigation expenses. It provides, as pertinent here: "(a) At least 20 days prior to *the date of the trial on issues relating to compensation*, the plaintiff shall file with the court and serve on the defendant its final offer of compensation in the proceeding and the defendant shall file and serve on the plaintiff its final demand for compensation in the proceeding. The offer and the demand shall include all compensation required pursuant to this title, including compensation for loss of goodwill, if any, and shall state whether interest and costs are included. *These offers and demands shall be the only offers and demands considered by the court in determining the entitlement, if any, to litigation expenses. . . .* [¶] (b) If the court, on motion of the defendant made within 30

5

days after entry of judgment, finds that the offer of the plaintiff was unreasonable and that the demand of the defendant was reasonable viewed in the light of the evidence admitted and the compensation awarded in the proceeding, the costs allowed pursuant to Section 1268.710 shall include the defendant's litigation expenses. [¶] (c) In determining the *amount* of litigation expenses allowed under this section, the court shall consider the offer required to be made by the plaintiff pursuant to Section 7267.2 of the Government Code,[3] any deposit made by the plaintiff pursuant to Chapter 6 . . . and any other written offers and demands filed and served before or during the trial." (Emphasis added.)

The purpose of section 1250.410 is "to encourage settlement of condemnation actions by providing incentives to a party who submits a reasonable settlement offer or demand before trial. [Citation.] A property owner who files a reasonable demand, but is required nonetheless to litigate because of the public agency's unreasonable position, can be fully compensated for . . . litigation expenses. Conversely, a condemnor who makes a timely reasonable offer may avoid having to pay the property owner's expenses except for taxable costs." (*Santa Clara Valley Water Dist. v. Gross* (1988) 200 Cal.App.3d 1363, 1368 (*Gross*).)

### B. Historical Changes to the Statute

The statute was originally enacted in 1974, as former section 1249.3. (Stats. 1974, ch. 1469, § 1, p. 3208.) A year later it was re-enacted with minor changes, and provided as follows: "At least 30 days *prior to the date of trial*, the plaintiff shall file with the court and serve on defendant its final offer of compensation in the proceeding and the defendant shall file and serve on the plaintiff his final demand for compensation in the proceeding." (Stats. 1975, ch. 1275, § 2, p. 3432, emphasis added.) In 1982 that

---

[3] Government Code section 7267.2 essentially requires a condemning agency, prior to adopting a resolution of necessity, to determine the amount of just compensation, including damages, to which the property owner would be entitled due to the taking, and to make an offer to the property owner to acquire the property for the full amount so determined.

language was changed to require that the offer and demand be made "[a]t least 30 days prior to the date of *the trial on issues relating to compensation . . . .*" (Stats. 1982, ch. 1059, § 2, p. 3833, emphasis added.)  The origin and significance of this amendment will be discussed in other portions of this opinion.

Finally, we note that the 1999 amendment to the statute changed the deadline for filing the final offer and demand from 30 days to 20 days prior to trial.  (Stats. 1999, ch. 102, § 1, pp. 1704–1705.)

### III.  THE STANDARD OF REVIEW

The parties agree the issues presented are questions of law pertaining to the interpretation and application of Section 1250.410.  Accordingly, our review is de novo. (*Carver v. Chevron USA, Inc.* (2002) 97 Cal.App.4th 132, 142.)

### IV.  ARGUMENTS ON APPEAL

As we have described, section 1250.410, subdivision (a), provides that the offer and demand made "at least 20 days prior to trial on issues relating to compensation" shall be "the only offers and demands considered by the court in determining the entitlement, if any, to litigation expenses."  According to the State, this language means that the offer and demand filed prior to the *first date set for trial* are the only offer and demand that can be considered in determining entitlement to litigation expenses.  For this proposition they cite *City of San Leandro v. Highsmith* (1981) 123 Cal.App.3d 146 (*Highsmith*) and *People ex rel. Dept. of Transportation v. Gardella Square* (1988) 200 Cal.App.3d 559 (*Gardella Square*).

In *Highsmith*, the condemnor (the City) filed an offer of $250,000 under section 1250.410, prior to the date set for trial.  The property owners did not make a formal demand under the statute.  Rather, less than 30 days prior to the date set for trial they communicated to the City their opinion of value in the amount of $550,000 at a deposition, and repeated this valuation in the pretrial and settlement conference statements.  (*Highsmith, supra,* 123 Cal.App.3d at pp. 151, 153.)  The trial date was

7

continued, however, and 14 days before trial the property owners filed a "Final Demand for Compensation" in the amount of $450,000. The jury found the property was worth $410,000, but the trial court denied the property owners' motion for litigation expenses. (*Id.* at p. 152.)

On appeal, the property owners conceded that their demand for $450,000 filed 14 days before trial was untimely, but argued that the $550,000 demand in their pretrial and settlement conference statements " 'substantially complied' " with the statutory requirements. (*Id.* at p. 153.) Although these earlier demands were not made at least 30 days prior to the first scheduled trial date, they were nonetheless timely, the property owners claimed, because they were made more than 30 days before the actual trial date. (*Id.* at p. 154.)

The court rejected both arguments. It concluded that "a recital of the demand and offer in a settlement conference statement, or in any other document, is not an adequate substitute for the formal demand and offer contemplated by section 1250.410 unless the parties have stipulated to a less formal exchange." (*Id.* at p. 155.) It further ruled that "[t]he original trial date is the proper one for measuring the 30-day notice. To hold otherwise would encourage procrastination in making an offer or demand and would delay meaningful negotiations. '[The] purpose [of the statute] is to encourage early settlement so trial can be avoided' [citations], and the statute imposes upon 'both parties to the litigation the duty to act reasonably in an effort to settle the disputes.' [Citation.] To allow either party to gamble on a delay in the trial court would not serve the purposes of the statute." (*Id.* at pp. 154–155.)

*Gardella Square* essentially followed *Highsmith*. The appellate court there concluded that "the original trial date was the proper date to use when determining whether the parties' final offer and demand were reasonable under section 1250.410"; it rejected the contention that an offer made prior to a *continued* trial date satisfied the statute. (*Gardella Square, supra,* 200 Cal.App.3d at p. 577.) The *Gardella Square* court

8

repeated the *Highsmith* rationale that allowing consideration of a statutory offer or demand made prior to a continued trial date would "encourage procrastination in making an offer or demand, . . . would delay meaningful negotiations[, and would] allow either party to gamble on a delay in the trial [date, which] would not serve the purposes of the statute." (*Id.* at p. 576.)

The Hansens question both the application and the reasoning of *Highsmith* and *Gardella Square*.[4]  They argue that the later case of *Community Redevelopment Agency v. Matkin* (1990) 220 Cal.App.3d 1087 (*Matkin*), controls.

In *Matkin*, the property owners asserted in their answer that the condemnor (the City) had no right to take the property.  The issue of the City's right to condemn was bifurcated and proceeded to trial, after which the parties stipulated to an interlocutory judgment in which the City's right to take was resolved.  (*Matkin, supra,* 220 Cal.App.3d at pp. 1091–1092.)  A trial date was then set on the issue of compensation.  The City thereafter filed three separate offers in advance of three continued trial dates, the final offer being $663,776.  The property owners, however, did not file any demand until six weeks prior to the actual trial, at which time they demanded $690,000.  (*Id.* at p. 1092.)  The case went to trial and the jury awarded compensation in the amount of $686,868.  (*Ibid.*)  The property owners, over the City's objection, were awarded their litigation expenses.  (*Id.* at pp. 1092–1093.)

On appeal, the City argued that the property owners' actions were " 'antithetical to the spirit and purposes' " of the statute because they " 'gambled on the possibility that trial would not commence' " on the dates originally set.  (*Matkin, supra,* 220 Cal.App.3d at p. 1093.)  Because the statute is primarily for the property owners' benefit, the City

---

[4]  Because the property owner in *Highsmith* never made a timely, statutorily valid demand under any interpretation of the phrase "date of trial," the conclusion in *Highsmith* has been described as dicta. (*Gardella Square, supra,* 200 Cal.App.3d at p. 576; *Matkin, supra,* 220 Cal.App.3d at p. 1094, fn. 4.)

argued, their failure to file a timely final demand under the statute extinguished their right to seek litigation expenses. (*Id.* at p. 1093.) The City also cited the holding in *Gardella Square* for the proposition that the phrase "date of the trial" in the statute refers only to the original trial date. (*Id.* at p. 1094.)

For their part, the property owners argued that *Highsmith* was no longer good law because the statute was amended the following year, and the phrase "30 days prior to the date of trial" was changed to "30 days prior to the date *of the trial on the issues relating to compensation* . . . ." (Emphasis added.) (§ 1250.410, subd. (a).) The property owners claimed this was intended to abrogate the *Highsmith* rule so that courts could consider the last "final" offers and demands made prior to the *actual* trial on the issue of compensation in deciding whether a condemnee is entitled to litigation expenses. (*Matkin, supra,* 220 Cal.App.3d at p. 1095.)

The Court of Appeal rejected both arguments. With regard to the City's contention it stated, "we see no reason why a condemnee's failure to file a demand 30 days before the original trial date should have any bearing on the effect of filing a demand as to a continued trial date. Allowing the condemnee another chance, even after the failure to timely file at an earlier date, does not defeat the purpose of the statute." (*Matkin, supra,* 220 Cal.App.3d at p. 1094.) The court distinguished *Gardella Square* on the ground that, there, the court decided "which trial date—original or continued—was the appropriate one for purposes of determining the reasonableness of the parties' final offer and demand—not whether the failure to file a demand before the original trial date precludes an award of litigation expenses as a matter of law." (*Matkin,* at p. 1095.)

The court also rejected the property owners' argument that *Highsmith* was effectively overruled by the 1982 amendment. The court reviewed the legislative history of that amendment and determined there was no indication the Legislature intended to overrule *Highsmith*'s conclusion that only offers/demands made before the "date first set for trial" could be considered. Rather, the legislative intent was "to clarify any ambiguity

10

which might result in instances where the condemnation proceedings are bifurcated. In other words, without the clarifying language, the term 'trial' would be confused with the proceeding at which noneconomic issues are resolved, such as one relating to the condemnee's objections to the taking." (*Matkin, supra,* 220 Cal.App.3d at p. 1096.)

The court nevertheless ruled in favor of the property owners, as it agreed with their contention that the intent of section 1250.410 is better achieved if there is incentive to engage in settlement negotiations before *each* continued trial date, particularly given the practical reality that cases often do not go forward on the first date set for trial. (*Matkin, supra,* 220 Cal.App.3d at p. 1096.) Conversely, the court explained, if the statute were interpreted as argued by the City, " 'all incentives for reasonable settlement conduct would be removed after an initial trial date has passed, settlement of eminent domain cases would be discouraged and more cases would proceed unnecessarily to trial.' " (*Id.* at p. 1096.) The court therefore concluded "the purpose of section 1250.410, *i.e.,* to encourage settlement and to avoid trial, is served where final offers and final demands are filed at least 30 days prior to the actual trial, *regardless of whether offers and demands were timely filed in connection with previously scheduled trial dates.* The '30-day cutoff period was presumably chosen by the Legislature as a stage of the condemnation proceeding at which needless incurrence of litigation preparation expenses could be avoided by receipt of a reasonable settlement offer from the other party.' [Citation.] This is accomplished so long as the offers and demands are filed and served 30 days before the actual trial date." (*Id.* at p. 1097, emphasis added.)

The State seeks to distinguish *Matkin* as applying only to cases where "there was *no* statutory demand made prior to a previously scheduled trial date," and argues that "[*Matkin*] does not in any way authorize basing litigation expenses on a midtrial demand made in connection with a continued portion of a trial." In the State's view, *Los Angeles*

11

*County Flood Control Dist. v. Mindlin* (1980) 106 Cal.App.3d 698 (*Mindlin*) is the controlling authority.[5]

In *Mindlin*, the proceedings were bifurcated, with preliminary issues being decided by the court, including whether the land being condemned was actually in a river bed, or in a flood control channel, or was subject to flood hazard, which would preclude its development as a commercial property. (*Mindlin, supra,* 106 Cal.App.3d at pp. 703–704.) The condemnor (the District) made a pretrial offer of $11,500, and the property owner demanded $60,000. (*Id.* at p. 703.) After the bench trial, which resulted in rulings favorable to the property owner, the parties agreed to the appointment of an independent appraiser, who opined the property was worth $44,200. More than 30 days prior to the valuation trial, the District made additional offers, one for $40,000 (without interest), and a second one for $44,200 with interest, but subject to the District's right to appeal on the preliminary issues. The property owner accepted this offer, subject to his right to request litigation expenses. (*Id.* at p. 704.)

In seeking litigation expenses, the property owner argued that the only "meaningful" offer was the original offer in the amount of $11,500. (*Mindlin, supra,* 106 Cal.App.3d at p. 717.) The trial court agreed, finding, among other things, that (1) the operative "date of trial" was that which commenced in June (on the preliminary issues), and (2) the District's offer submitted before the date of trial was unreasonable and the property owners' demand was reasonable. (*Id.* at pp. 718–719.) The court also ruled that the District's amended final offer could not be considered for the additional reason that it was made subject to the right to appeal on the preliminary issues, and so it was not a final

---

[5] *Mindlin* involved the application of former section 1249.3. The key language differs from the current section 1250.410. It provides, "[a]t least 30 days *prior to the date of trial*, plaintiff shall file with the court and serve a copy thereof on defendant its final offer to the property sought to be condemned and defendant shall in like manner, file and serve a copy thereof on plaintiff his final demand for the property sought to be condemned." (Emphasis added.)

12

offer in the sense intended by the statute, i.e., an offer to finally settle the litigation.  The court awarded approximately $30,000 in litigation expenses.  (*Id.* at p. 704.)

On appeal, the District argued that the statutory phrase " 'before the trial' " refers only to the valuation phase of the trial, and therefore the operative offers, for purposes of determining reasonableness, were those made after the trial on the preliminary issues and before the valuation trial.  The Court of Appeal disagreed.  While musing that "it may well be that the Legislature did not, in enacting . . . section 1249.3, consider the possibility of bifurcated proceedings," the court concluded it could not "rewrite the statute."  It determined that the phrase "before the trial" was reasonably construed to mean "before the commencement of trial of the eminent domain action including both legal (and possibly preliminary) issues and valuation of the subject property," and so, "the pertinent offer was that made by the District *before* the litigation on the preliminary issues commenced.  Since the statute was intended to compensate a condemnee unnecessarily put to the expense of litigation (without specifying litigation on the issue of value) it seems in keeping with that intention to allow, under appropriate circumstances, an award of expenses even when the litigation task is that of presenting the condemnee's position on preliminary issues; the expense incurred on such issues is as necessary as that incurred with respect to the valuation issue."  (*Mindlin, supra,* 106 Cal.App.3d at p. 718.)

The Hansens maintain that the State's reliance on *Mindlin* is misplaced because it was decided prior to the 1982 amendment which newly specified that the operative offer and demand are to be filed prior to the date of  "the trial on issues relating to compensation."  Citing *Matkin*, the Hansens point out that the intention of the amendment was to clarify that, in bifurcated proceedings, the statutory exchange does not occur prior to the trial in which "noneconomic issues" are adjudicated.

In response, the State argues that the phrase "noneconomic issues" pertains only to issues predicate to the condemnation itself, such as "the condemnee's objections to the right to take" (also citing *Matkin*), and that the issues of entitlement to damages for loss

13

of goodwill and impairment of access are "*economic* issues *directly* relating to compensation."  The Hansens counter that the term "compensation" has a particular meaning in eminent domain law, and pertains narrowly to the monetary aspects of the trial; therefore, the operative offer and demand are those timely made prior to the trial in which compensation is determined.

In this appeal we have been asked to elucidate the statute's meaning against the backdrop of these somewhat conflicting developments in the caselaw.

## V.  DISCUSSION

The Legislature has provided specific directions as to how a court is to decide whether a property owner is entitled to litigation expenses, based upon each party's final offer and final demand for compensation.  The offer and demand must be made "[a]t least 20 days prior to the date of the trial on issues relating to compensation," and these "shall be the only offers and demands considered by the court in determining the entitlement, if any, to litigation expenses."  (§ 1250.410, subd. (a).)  Any other "written offers and demands filed and served before trial" may be considered only in determining the amount of litigation expenses allowed.  (§ 1250.410 subd. (c).)  If the offer and demand are timely, the court must then determine whether the condemnor's offer was unreasonable and the property owner's demand was reasonable "in the light of the evidence admitted and the compensation awarded."  (§ 1250.410, subd. (b).)[6]

While these directions are specific they are not entirely clear.  The statute does not define the phrase "trial on issues relating to compensation," nor does it specify whether

---

[6]  Of interest here, but not directly relevant to our analysis is the test used in determining the reasonableness of the condemning agency's offer.  The courts do not simply compare the amount of the offer and the amount of the jury award.  Rather, they also look to whether the offer was made in good faith, based upon defensible legal assumptions.  Thus, for example, an extremely low offer can nonetheless be found reasonable if it is premised on a good faith, fact-based estimate and on an arguable, but incorrect legal premise.  (*San Diego Metropolitan Transit Development Bd. v. Cushman* (1997) 53 Cal.App.4th 918, 933 (*Cushman*).)

14

the term "date of the trial" means the original trial date, the continued trial date, the actual trial date, or the bifurcated trial dates. Thus, we must first determine whether *only* the offer and demand made prior to the *first date set for trial* qualifies under section 1250.410, or whether any additional offer or demand made at least 20 days prior to the actual trial so qualifies.

A. *What Offers and Demands Qualify Under Section 1250.410, Subdivision (a)?*

As has been described, the purpose of Section 1250.410 "is to encourage settlement of condemnation actions by providing incentives to a party who submits a reasonable settlement offer or demand before trial." (*Gross, supra,* 200 Cal.App.3d at p. 1368.) The *Highsmith* and *Gardella Square* courts concluded that final offers and demands must be made 30 days before the *original* trial date because any other rule "would encourage procrastination in making an offer or demand and would delay meaningful negotiations." (*Highsmith, supra,* 123 Cal.App.3d at p. 154; and see *Gardella Square, supra,* 200 Cal.App.3d at pp. 576–578.) Because the purpose of the statute is to encourage "early settlement so trial can be avoided," the courts reasoned, to allow "either party to gamble on a delay in the trial court would not serve the purposes of the statute." (*Id.* at p. 576.)

We agree that the goal of the statute is to encourage an "early settlement so trial can be avoided," but we do not agree that this goal would be thwarted by considering, for purposes of section 1250.410, offers and demands made at least 20 days before a continued or actual trial date. Nothing in the statute states or implies that it was intended to disallow from consideration sequential settlement attempts throughout the life of the lawsuit, up until 20 days before the trial on issues related to compensation. If the statute's purpose is to avoid the unnecessary incurrence of *trial preparation* expenses, (*Matkin, supra,* 220 Cal.App.3d at p. 1097), it makes little sense to limit the operative statutory offer and demand to those made prior to the first trial date. Allowing the court to consider later offers and demands under section 1250.410 would not *inevitably*

15

"encourage procrastination" or "delay meaningful negotiations," but even where it might result in such a delay, it would also have the salutary benefit of promoting the continual refinement of the offers and demands toward a compromise.

We find the reasoning of *Matkin* persuasive. There, the court concluded that the statute's intentions are carried out "where final offers and final demands are filed at least 30 [now 20] days prior to the actual trial, regardless of whether offers and demands were timely filed in connection with previously scheduled trial dates." (*Matkin, supra,* 220 Cal.App.3d at p. 1097.) Because the cutoff period was presumably selected by the Legislature as the point in time when the parties could avoid the "needless incurrence of litigation preparation expenses," the statute's goal is achieved "so long as the offers and demands are filed [20] days before the actual trial date."[7] (*Ibid.*)

The *Matkin* reasoning also aligns with realities of litigation. Trial dates are routinely continued, sometimes multiple times (see, e.g., *Highsmith, supra,* 123 Cal.App.3d at p. 152 [one continuance]; *Gardella Square, supra,* 200 Cal.App.3d at pp. 564–565 [two continuances]; *Matkin, supra,* 220 Cal.App.3d at pp. 1091–1092 [bifurcated proceedings, total of four continuances].) In this case, trial was originally set for March of 2009. After the matter was bifurcated it was rescheduled four times, and the court trial did not begin until September of 2010. Similarly, the jury trial on valuation and damages was originally set for February 2010, but was continued four times, and trial did not commence until nearly a year later. One can imagine any number of reasons why

---

[7] *Matkin* attempts to distinguish *Gardella Square* on the ground that, "unlike our case, the court in *Gardella Square* was called upon to decide which trial date—original or continued—was the appropriate one for purposes of determining the reasonableness of the parties' final offer and demand—not whether the failure to file a demand before the original trial date precludes an award of litigation expenses as a matter of law." (*Matkin, supra,* 220 Cal.App. 3d at p. 1095.) Given the holding in *Matkin* that an offer or demand is timely so long as it is filed 30 days before trial "regardless of whether offers and demands were timely filed in connection with previously scheduled trial dates" (*id.* at p. 1097), we think the distinction is tenuous, if not illusory.

16

the parties might have wished to reconsider their offers and demands during that three-year period, including the simple desire to put an end to protracted litigation. We see no reason to discourage a party from revisiting its statutory settlement offer or demand by declaring subsequent offers and demands invalid for the purpose of determining entitlement to litigation expenses. We therefore hold that the offer and demand made prior to the *first* date set for trial are not the only offer and demand that qualify under section 1250.410, subdivision (a); an offer or demand is timely so long as it is filed 20 days before trial regardless of whether offers and demands were timely filed in connection with previously scheduled trial dates.

This does not, however, resolve the matter. We must still determine whether, for purposes of section 1250.410, "the trial on issues relating to compensation" refers only to the trial on the amount of compensation to be awarded, or whether it begins at phase one of a bifurcated proceeding in which preliminary issues of the property owner's *right to seek* damages for impairment of access, loss of goodwill, or other severance damages is adjudicated.[8]

### B. In a Bifurcated Eminent Domain Proceeding, What Is "the trial on issues relating to compensation"?

The State argues that the court and jury phases of an eminent domain trial are two parts of a single trial, and therefore "the trial" in this case began at the start of the first bifurcated proceeding, citing *City of Santa Barbara v. Superior Court* (1966) 240 Cal.App.2d 612 (*City of Santa Barbara*) and *City of Los Angeles v. Cole* (1946) 28 Cal.2d 509, 512 (*Cole*), overruled on another ground in *County of Los Angeles v. Faus* (1957) 48 Cal.2d 672, 680. Neither case is on point. For example, in *City of Santa Barbara*, a bifurcated eminent domain action, the court held that a notice of intention to

---

[8] This issue was raised for the first time in the Hansens' reply brief below, but was not decided below. The issue has been thoroughly briefed on appeal, however, and it being a question of law, we proceed to decide it.

17

move for a new trial was premature because it was filed after the jury returned a verdict on the question of compensation, but before the trial court rendered its decision on the issues of public use and necessity. (*City of Santa Barbara, supra,* 240 Cal.App.2d at p. 614; see also, *Cole, supra,* 28 Cal.2d at p. 512.) The question of whether the court and jury phases of a bifurcated eminent domain action constitute one trial or two trials did not arise in either case.

Certainly, an eminent domain action is subject to the single judgment rule, and the action is not completed until all issues have been adjudicated. (*Cole, supra,* 28 Cal.2d at p. 512.) This does not answer the question whether a bifurcated proceeding is one trial or two. We have found no authority on point, although the statutes and cases we have examined speak primarily in terms of separate trials. (§ 1048, subd. (b) ["when separate trials will be conducive to expedition and economy, [the court] may order a separate trial of any cause of action"]; § 598 [the court may order "that the trial of any issue . . . shall precede the trial of any other issue" and if the issue so tried does not result in a judgment, then "the trial of the other issues . . . shall thereafter be had"].) In *Horton v. Jones* (1972) 26 Cal.App.3d 952, for example, the court described a proceeding which was bifurcated on the issues of liability and damages variously as a "continuing trial" (*id.* at p. 959), as "bifurcated trials" (*id.* at p. 956) and as, "in effect, two trials in one action" (*id.* at p. 957). What we can glean from these authorities is that bifurcated proceedings are not uniformly characterized either as a continuing trial or as two trials, and therefore this analytical approach is not helpful in solving the problem before us.

The State next argues that, even if there are two separate trials, the trial on issues relating to compensation encompasses a trial on any preliminary issue upon which compensation might be predicated, such as adjudication of the right to damages for loss of goodwill and impairment of access. The State asserts, "if 'the right to claim compensation' is not 'an issue relating to compensation,' then nothing is."

18

It is arguable that the plain meaning of the words "issues relating to compensation" can be understood to include any issue that might have relevance to the ultimate question of the property owner's compensation. But we must consider, too, the Hansens' contention that the phrase "issues relating to compensation" has a particular meaning in the context of eminent domain law, and in that context refers only to the valuation and damages portion of the case. The Hansens further argue that the statutory language and history indicate the Legislature contemplated two trials where the proceedings have been bifurcated, and the reference to "the" trial on issues related to compensation can only refer to the trial in which the jury decides how much compensation should be awarded. The Hansens assert, "[s]ince the purpose of Section 1250.410 is to encourage settlement, it is practical and common sense to conclude that the legislative intent was to allow offers and demands prior to *the* trial when compensation was actually decided, rather than *the* trial where entitlement to compensation was decided."

There is no precedent that interprets the phrase "issues relating to compensation" in section 1250.410. We therefore looked to another area of eminent domain law that might illuminate the issue, namely, the right to a jury trial on the issue of compensation.

The California Constitution guarantees to the parties the right to a jury trial on the issue of just compensation. (Cal. Const. Art. 1, § 19.) In all other respects, an eminent domain trial is a "special proceeding[] of a civil nature" (Code Civ. Proc., Part 3, §§ 1063 et seq.), and is governed by a specially crafted set of statutes (§ 1230.010 et seq.). Because it is a special proceeding, it is not included in the class of cases enumerated in section 592 in which a jury trial is required, and so, "except [for] those *relating to compensation*, the issues of fact in a condemnation suit, are to be tried by the court . . . ." (*Vallejo etc. R. R. Co. v. Reed Orchard Co.* (1915) 169 Cal. 545, 556 (*Vallejo*), emphasis added.)

19

Thus, for example, In *Oakland v. Pacific Coast Lumber etc. Co.* (1915) 171 Cal. 392 (*Oakland*), the property owner argued that the property being taken was actually part of a larger parcel and therefore the owner was entitled to seek damages to the remainder. (*Id.* at p. 396.)  At trial the judge decided this question rather than allowing it to be submitted to the jury, for which appellant claimed error.  (*Id.* at p. 397.)  The court of appeal affirmed, stating that "neither the state nor . . . any other person or corporation, exercising the power of eminent domain, is compelled to submit to the determination of a jury every question of fact . . . .  It is only the 'compensation,' the 'award,' which our constitution declares shall be found and fixed by a jury. All other questions of fact, or of mixed fact and law, are to be tried, as in many other jurisdictions they are tried, without reference to a jury." (*Id.* at pp. 397–398.)

Similarly, in *People v. Ricciardi* (1943) 23 Cal.2d 390 (*Ricciardi*), the court concluded it was the judge's province to decide whether the property owner was entitled to damages due to impairment of the property owner's right of access, because "all issues except the sole issue *relating to compensation*, are to be tried by the court." (*Id.* at p. 402, emphasis added.)  "It was therefore within the province of the trial court and not the jury to pass upon the question whether under the facts presented the defendants' right of access will be substantially impaired.  If it will be so impaired the extent of the impairment is for the jury to determine." (*Id.* at pp. 402–403.)

Finally, in *Los Angeles Unified School Dist. v. Casasola* (2010) 187 Cal.App.4th 189 (*Casasola*), the property owner was subjected to a penalty for failure to vacate the property in a timely fashion, as had been agreed between the property owner and the school district.  The property owners argued on appeal that the trial court erred in not submitting to the jury the question of whether the school district had, by its conduct, waived the penalty provision.  (*Id.* at p. 213.)  The Court of Appeal rejected that argument, with the following explanation:  "In an eminent domain action, a property owner ' "is entitled to a jury trial on the issue of just compensation—i.e., the fair market

20

value of the property taken' " (§ 1263.310). [Citation.] However, because a condemnation suit is a special proceeding, ' "all issues except the sole issue relating to compensation[] are to be tried by the court" including, "*except those relating to compensation*, the issues of fact." [Citation.]' [Citation.]." (*Ibid.,* emphasis supplied.)

It thus appears that in the parlance of eminent domain, "issues relating to compensation" are those pertaining to the amount of compensation, that is, the fair market value of the property plus the amount of any other damages resulting from the condemnation. The compensation issues do not include other issues of fact or law, such as whether the property owner is entitled to severance damages because the parcel being taken is part of a larger parcel (*Oakland, supra,* 171 Cal. at pp. 396–397), whether the condemnor has the legal authority to condemn the property (*Matkin, supra,* 220 Cal.App.3d at pp. 1091–1092) or whether the property owner is entitled to damages for impairment of access (*Ricciardi, supra,* 23 Cal.2d at pp. 402–403). We therefore conclude that the phrase "the trial on issues relating to compensation" found in section 1250.410 has a particular meaning in eminent domain practice, and refers to the trial in which the trier of fact determines the amount of compensation, including the amount of damages if any, to be awarded to the property owner. (*Creutz v. Superior Court* (1996) 49 Cal.App.4th 822, 829 ["when the Legislature uses a term of art, a court construing that use must assume that the Legislature was aware of the ramifications of its choice of language"].)

The scant legislative history of the amendment supports this construction. The 1982 amendment replaced the phrase "prior to the date of trial" with "prior to the date of the trial on the issues relating to compensation." The suggestion to include this language came from the Committee on Condemnation of the State Bar. As originally proposed, the 1982 amendment provided that the plaintiff would file its final offer "at least 30 days prior to the date of trial" and the defendant was to file its final demand "at least 30 days prior to the date of any valuation trial." The Committee opined, "[t]he problem with that

21

text is the application of its terms to a bifurcated trial. Often the noneconomic issues are tried first, after which there is a trial on the economic issues. [Also, as] presently written the first sentence is unclear as to when the plaintiff has to file an offer [while it] specifies when the defendant has to file a demand." (Com. on Condemnation of the State Bar of Cal., letter to Terrance Flanigan, State Bar of Cal., in Legis. Bill File of Assem. Com. on Judiciary regarding Assem. Bill No. 3274 (1981–1982 Reg. Sess.), Mar. 19, 1982.) Based upon this legislative history, *Matkin* concluded that the change was intended to "clarify any ambiguity which might result in instances where condemnation proceedings are bifurcated." (*Matkin, supra,* 220 Cal.App.3d at p. 1096.) Condemnation proceedings are commonly bifurcated precisely because, as here, all issues except compensation are tried to the court and the issue of compensation is tried to the jury. (*Redevelopment Agency v. Contra Costa Theatre, Inc.* (1982) 135 Cal.App.3d 73, 79–80.) As the State itself pointed out, "a bifurcated trial is the usual practice in eminent domain proceedings, given the separate functions of the judge and the jury in such cases," citing *Marshall v. Department of Water & Power* (1990) 219 Cal.App.3d 1124. It thus follows most logically that the Legislature, in adopting the 1982 amendment, was referring to "the trial" in which compensation is determined.

The State contends the cases (*Oakland, Ricciardi* and *Casasola*) merely hold that juries decide the *amount* of compensation and courts decide all other "questions of fact and law, including those relating to compensation." In the State's view, the Legislature was presumed to know that issues "related to compensation," such as the right to severance damages, have always been tried to the court, so when it amended the statute "it clearly did not intend to limit exchanges of demands and offers to the jury phase of a bifurcated proceeding." But this is simply another way of saying that the issue of a property owner's entitlement to severance damages is an issue "related to compensation" as that phrase is used in section 1250.410. We have already noted that this ignores the actual language of the cases. The cases do not say the court decides all other issues

22

"relating to compensation" except the amount, as the State's argument implies. Rather, the cases describe the court as deciding: "[the issues of fact] *except* [for] those relating to compensation" (*Vallejo, supra,* 169 Cal. at p. 556, emphasis added); "all issues except the sole issue *relating to compensation*" (*Ricciardi, supra,* 23 Cal.2d at p. 402 (emphasis added)); or " ' "all issues . . ." including, "*except those relating to compensation*, the issues of fact." ' " (*Casasola, supra,* 187 Cal.App.4th at p. 213, emphasis added.)

Taking a slightly different approach, the State proffers a broad interpretation of the 1982 amendment by which "the trial on the issues *relating* to compensation" would include a trial on any issues that are relevant to compensation, and would exclude only a trial on issues that are completely unrelated to compensation, such as a challenge to the right to take, or a claim that there was an erroneous determination of public use and necessity. In support, the State points to *Matkin,* which states that the amendment was added so "the term 'trial' [would not be] confused with the proceeding at which noneconomic issues are resolved, *such as one relating to the condemnee's objections to the taking*." (*Matkin, supra,* 220 Cal.App.3d at p. 1096, emphasis added.)

We do not think this sentence supports the State's position. *Matkin* did not purport to define the distinction between economic and noneconomic issues; it only used the "condemnee's objections to the taking" as one example of a noneconomic issue— presumably because in *Matkin* the condemnee's objection to the taking *was* the preliminary issue. Nothing in the court's opinion suggests that by using that example it was also expressly or impliedly deciding that any question relating to a property owner's right to claim damages was an "economic" issue. In any event, the statutory framework gives us no reason to distinguish between bifurcated proceedings in which the right to take is adjudicated and bifurcated proceedings in which the right to seek damages is adjudicated.

The State also claims that if the Legislature wanted the offer and demand to be triggered only by the jury phase of the trial relating to the amount of compensation, "it

23

could have easily done so by narrowly stating 'trial on the issue of the amount of compensation.' That it did not do so evidences the legislature's intent not to limit exchanges to the jury phase of trial only."

We know of no rule of statutory construction—and the State cites no authority for its claim—that if the Legislature could have been more explicit, but was not, then the Legislature intended the statute to be more inclusive. Any number of statutes might be made more explicit with additional words, but the courts cannot rely on such theoretical suggestions untethered to legislative history or statutory context in ascertaining legislative intent.

Finally, the State argues that the goal of early settlement is hindered by delaying the statutory exchanges until the compensation phase, such that "all issues but the amount of compensation must be tried without an exchange of offers and demands." This argument has merit, but we think that in bifurcated proceedings our interpretation more effectively advances the statute's central purpose of encouraging settlement. In a bifurcated proceeding, such as here, settlements are less likely to occur if the parties are required to make their one and only statutory final demand and offer prior to the trial in which the court adjudicates, for example, the property owner's entitlement to various categories of damages. It can be safely assumed that the disputed preliminary issues will usually result in dramatically divergent assessments of the amount of just compensation. (See, e.g., *Mindlin, supra,* 106 Cal.App.3d at pp. 703–704 [prior to determination of whether land could be developed for commercial purposes offer was $11,500 and demand was $60,000].) Therefore, it is only after those preliminary questions are decided that the parties will be able to make a reasonably reliable estimate that encompasses "all compensation" that is due. (§ 1250.410, subd. (a).)

Additionally, if the statutory exchange *must* be made prior to a bifurcated trial on the type of damages the property owner may claim, then the condemning agency would gain an undue advantage. As we earlier explained, the condemnor's offer will be

24

considered "reasonable" even if it is only a fraction of the jury's award *if* it is based on a reasonable set of legal assumptions. So, for example, courts have found very low offers to be nonetheless reasonable where the crux of the parties' disagreement was not about valuation, but was due to a bona fide legal dispute that required resolution. The court's rationale is that a condemning agency need not "compromise its legal position just to avoid litigation." (*Cushman, supra,* 53 Cal.App.4th at p. 933 [dispute as to whether the appraiser's method of calculation was legally valid]; and see, *Escondido Union School Dist. v. Casa Sueños de Oro, Inc.* (2005) 129 Cal.App.4th 944, 986 [dispute as to whether manufactured homes were " 'improvements pertaining to the realty' " for which the property owner was entitled to compensation]; *State of California ex rel. State Pub. Works Bd. v. Turner* (1979) 90 Cal.App.3d 33, 37 [dispute as to whether the State should be held liable for inverse condemnation damages].)

In this case, the State's statutory offer of $784,000 was predicated on its position that the Hansens were not entitled to damages for impairment of access. Assuming arguendo that this position was legally tenable, under the authorities cited above the offer would likely have been considered to be "reasonable" even though it was less than a third of the jury's award. Under the State's interpretation of the statute—which would lock in that offer for purposes of determining reasonableness—it would have no incentive to make any new settlement offers prior to the trial on compensation. And, in fact, the State made no new offer even after the property owners prevailed on the issue of entitlement to damages, thus forcing the trial on compensation to go forward. The State's construction of the law does not advance the cause of settlement.

We do not ignore, nor do we necessarily disagree with, the *Mindlin* court's reasoning in concluding that the final offer and demand must be made prior to the first bifurcated trial: "Since the statute was intended to compensate a condemnee unnecessarily put to the expense of litigation (without specifying litigation on the issue of value) it seems in keeping with that intention to allow . . . an award of expenses even

when the litigation task is that of presenting the condemnee's position on preliminary issues; the expense incurred on such issues is as necessary as that incurred with respect to the valuation issue." (*Mindlin, supra,* 106 Cal.App.3d at p. 718.)  But the 1982 amendment, adopted after *Mindlin* was decided, did "specify[] litigation on the issue of value," and so *Mindlin* is no longer apposite.

In sum, we hold that section 1250.410, subd. (a) permits the courts, in determining reasonableness, to use the statutory final offer and demand made at least 20 days prior to the actual trial, and that, in a bifurcated proceeding, the statutory final offer and demand made at least 20 days prior to the trial on compensation issues are the operative offer and demand.

### C.  A Note to the Legislature

While we think this interpretation of the law accurately reflects its intent, we are nonetheless troubled by the statute's constricted mandate that allows only a *single* offer and demand to be considered on the issue of reasonableness.  As we read and understand the statute, it is at least theoretically possible for a condemning agency to set its prelitigation offer under Government Code section 7267.2 at an artificially low sum, insist upon a bifurcated trial on preliminary issues of dubious merit, then avoid paying the property owner's expenses for that trial by making a section 1250.410 offer that is reasonable prior to the compensation trial.

We observe that this provision—that only *one* offer and demand can be considered for purposes of entitlement to litigation expenses—was added in the 1982 amendment of the statute.  The legislative history indicates that its purpose was to codify the decision in *City of Gardena v. Camp* (1977) 70 Cal.App.3d 252, which held that offers or demands made after the 30-day cutoff in the statute could not be considered in determining entitlement to litigation expenses.  (*Id.* at p. 258; see *id*. at p. 254, fn. 1.)  A report to the Assembly Committee on the Judiciary explained that, according to the source of the bill, "trial courts are inconsistent in their application of the existing statute and will sometimes

26

consider on the question of entitlement offers or demands made after thirty days before trial. This measure is sought to eliminate the uncertainty and confusion found in the application of the statute." (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 3274 (1981–1982 Reg. Sess.), as amended Apr. 12, 1982.) Thus, while the legislative history expresses concern only about the use of *late* offers and demands for determining reasonableness, the unequivocal language of the statute goes beyond this concern to limit the court's reasonableness determination to a *single* final offer and demand made at least 20 days prior to the trial on the compensation issues. We, of course, cannot rewrite the statute, but the Legislature may wish to consider whether the scenario set forth above might be avoided, and whether settlement opportunities might be enhanced, if the courts were allowed to consider more than one offer and demand in determining whether the parties were being reasonable throughout the course of the litigation—the kind of determination that is routinely undertaken in the trial courts.[9]

## VII. DISPOSITION

The order denying the Hansens' motion for litigation expenses is vacated. The matter is remanded for further proceedings consistent with the views expressed in this opinion.

---

[9] This approach is consistent with the rationale of *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1026, in which our Supreme Court held that "where . . . a plaintiff serves two unaccepted and unrevoked statutory offers [pursuant to section 998] and the defendant fails to obtain a judgment more favorable than either offer, the trial court retains discretion to order payment of expert witness costs incurred from the date of the first offer." This encourages the making of more settlement offers and promotes the public policy of compensating injured parties by "according parties flexibility to adjust their settlement demands in response to newly discovered evidence." (*Ibid.*) In an eminent domain proceeding, allowing multiple statutory offers would give parties flexibility to adjust their settlement demands in response to the adjudication of preliminary legal issues.

27

_____

Rivera, J.

We concur:

_____

Ruvolo, P.J.

_____

Reardon, J.

A133252

The People ex rel. California Department of Transportation v. Hansen's Truck Stop, Inc., et al. (A133252)

Trial court:          Humboldt County

Trial judge:          Hon. Dale A. Reinsholtsen

Attorneys:

Law Offices of Thomas Becker, Thomas Becker, for Defendants and Appellants

California Department of Transportation Legal Division, Ronald W. Beals, Chief Counsel, David Gossage, Deputy Chief Counsel, Lucille Baca, Assistant Chief Counsel, and Douglas C. Jensen, Counsel, for Plaintiff and Respondent